JUDGE ROBERTSON
delivered the opinion op the court.
In October, 1862, the appellees, John Maret and several others, claiming to be creditors of the appellant, William H. Beazley, attached his real and personal estate, on the alleged ground that he concealed himself and was voluntarily in the lines of the Southern Confederacy. After constructive service on him as an absent defendant, the petitions were improperly taken for confessed, and judgments rendered for a sale of the attached property; and sales being afterwards reported, a distribution among the attaching creditors was adjudged. From that judgment his wife, or counsel employed by her, appealed to this court, which, in December, 1864, reversed the judgments for sale, and remanded the consolidated case for further proceedings. That mandate was entered in the circuit court at its March term, 1865, and the appellant not having returned to Kentucky, his wife offered to file for him an answer verified by her own affidavit, which the., court would not permit; and thereupon, on the same day, rendered a judgment confirming the sales and the order for distribution. The only reason suggested for' that premature and anomalous judgment is, that this court had reversed the judgments for sale on the sole ground of the non-filing of proper affidavits and bonds; and that the appellant’s technical appearance on the appeal in his own name removed the necessity for such affidavits and bonds; and that the opinion of this court did not set aside the sales, nor reverse the order for distribution.
At the succeeding September term the appellant, for the first time, made his personal appearance, and filed a petition for leave to answer, accompanied by his affidavit, averring that he had never returned to Kentucky until *468 long after the close of the preceding March term, 1865; that he had not left the State voluntarily, but was compelled to leave to save his life; that he left at home more property than was necessary for the payment of all his debts; that, by fraudulent combinations and otherwise, that property had been sold at a great sacrifice ; and that he did not owe some of the attaching creditors (naming them) anything, nor some others of them as much as claimed and adjudged.
On that affidavit the circuit court suspended its judgment of March, 1865, and gave the appellant leave to file an answer within sixty days. It seems that his wife or her counsel had appealed from the judgment of March, 1865, and that, only a few days after the close of the September term, 1865, of the circuit court, this coux-t affirmed the judgment of that texnn as to the purchase of the appellant’s land by Mershon, that seeming to be the only matter litigated in that appeal.
At the next term of the cix'cuit coux-t, and the first when he could have filed the answer which the court had given him leave to file, the appellant offered to file an answer denying that he had concealed himself, averring that he had never been, in fact, in court before his appearance at the September tex’m, 1865, and alleging other facts also, sufficient to show that, independently of the assexied groundlessness of the attachments, the claims of the appellees, Gill and Robinson and Lucy Beazley, and of some others, as recognized by the judgments, were flagrantly unjust, as he would show if allowed to defend.
That answer certainly presented an available defense; but the circuit court, misinterpreting the effect of its own previous orders and judgments, and of the affirmance by this court in September, 1865, overruled the appellant’s motion, and, for relief) he appeals to this court.
*469 A case more extraordinary has rarely, if ever, occurred in the history of Kentucky jurisprudence ; and the appellees now insist that the anomalous judgment of March, 1865, concluded all the appellant’s rights, and that, consequently, the circuit court had no right to admit the answer, the rejection of which is sought to be reversed by this appeal. If this be so, then the appellant’s right to open the decree by personal appearance and answer, within five years, having been abandoned by his constructive appearance and election to proceed by the alternative remedy by appeal, the benefit of reversal is also lost by hypertechnicality and perversion, whereby he has been, without his own fault, prevented from making the defense to which the reversal entitled him, and to make which was the only object of the appeal. If the law regulating proceedings against absent defendants authorized such an absurdity, justice to all parties, which was its aim, would, in this case,' be unreasonably frustrated, and the appellant mocked and victimized.
Though constructively present, yet he was actually still absent when the mandate of reversal ordering further proceedings was entered, and had no notice of it nor ability to make affidavit then to an answer, and might well complain of surprise at the circuit court’s proceedings at that term. But had he then been personally present, the judgment, on the day the mandate was entered, would have been unauthorized and altogether inconsistent with the mandate itself, which, reversing all the judgments, ordered further proceedings. And what did that order mean? Why, certainly, among other things, it meant that, as the appellant had entered his appearance, the proceeding would no longer be against an absent defendant, but should be further conducted just as if it had commenced with actual notice; and, consequently, the *470 judgments in rem having been set aside by this court, the jurisdiction of the circuit court was afterwards in personam only, and the further proceedings should conform.
Had this court recognized the construction as equivalent, in all respects, to an actual appearance at the time the appeal was taken, it would have said so, and •authorized personal judgments on the entry of the mandate, unless the appellant, before such judgments on that ..day, should file an answer litigating the claims and the grounds of the attachments; but after reversing the judgments for a cause applicable to a case of constructive service, and directing further proceedings, this court must be understood as intending, that, after the entry on the mandate in the circuit court, the appellant should be considered as personally in that court as on actual citation that day executed; consequently, without the appellant’s answer or consent, the circuit court had no jurisdiction to render its judgment on that. day or during that term. That court itself understood the case as then transformed from a proceeding in rem to one in personam, dispensing with the affidavits and bonds required in a suit against an absent defendant, and for want of which.this court had reversed the judgments. The circuit court, nevertheless, did not render any judgments for the debts claimed by the appellees, but only confirmed the sales not set aside by this court and the order for distribution not touched by the judgment of reversal. This court having reversed the judgments in rem, there is not even now any judgment for sale or for the debts claimed by the appellees; and the circuit court must have so understood its judgment, or it would not have allowed the appellant leave on his first personal appearance at the next term to file an answer within sixty days. That allowance was, in our opinion, permissible and proper, and reinstated the parties as they *471 stood on the day the mandate was entered, and before the premature judgment then rendered without authority and effect. The affirmance by this court before the expiration of the sixty days did not either depriye the appellant of the right to file his answer or touch any other judgment than that in favor of Mershon as purchaser of the appellant’s land, and as to whom alone the rejected amendment had teen offered.
Then the term at which the appellant’s answer under the leave was offered being the first when it could be filed, the circuit court erred in deciding that it came too late; and, consequently, that answer, containing apparently good matter of defense, the circuit court erred in refusing to permit it to be filed. It opened the whole case except as to the sale, and opened it for litigation in fersonam instead of in rem; and should the appellant finally succeed in quashing the attachment, or defeating the claims of any of the creditors to any extent, the sales standing, his remedy for reparation pro tanto may be on the bonds of the defeated appellees.
Wherefore, the judgment appealed from is reversed, and the cause remanded, with instructions to permit the rejected answer to be filed, and then to proceed with the case conformably with this opinion.