11998

LEAPHART v. SELBY

(133 S. E., 451)

1. PRINCIPAL AND AGENT.—Authority, whether expressed or implied to collect interest, is not authority for collecting principal, or any part thereof.

2. PRINCIPAL AND AGENT—MORTGAGEE, HAVING HELD OUT FIRM OF ATTORNEYS AS MONEY LENDER WITH GENERAL AUTHORITY TO ACT, CANNOT ASSERT CONTRARY AFTER MORTGAGOR HAD MADE PAYMENTS TO SUCH FIRM.—Where mortgagee held out firm of attorneys as money lender with general authority to act, he cannot assert to the contrary after mortgagor had made payments through such firm.

3. PRINCIPAL AND AGENT.—General course of dealing between person loaning money and firm of attorneys making loans for him held to show general agency.

4. ESTOPPEL.—Where one of two innocent persons suffers by wrongful act of third, one most at fault is required to bear loss.

5. PRINCIPAL AND AGENT—PERSON LOANING MONEY THROUGH FIRM OF ATTORNEYS, HAVING KNOWLEDGE SO AS TO PUT HIM ON INQUIRY OF SUCH FIRM'S ACTS, IS ESTOPPED FROM ASKING BORROWER TO BEAR

Loss Resulting From Paying Money Borrowed to Such Firm.—
Person furnishing money to firm of attorneys for purpose of making
loans, having knowledge so as to put him on inquiry as to good
faith of such firm, is estopped from asking borrower to bear loss
resulting from making payments on loan to such firm.

6. Interest—Mortgages—Mortgagor, Having Tendered Balance Due,
is Liable for Interest, but Not for Attorney's Fees or Costs,
Where Money Was Not Paid in Court, or Required to be Paid.—
Where money due on mortgage was tendered to mortgagee, but was
not paid in Court, or required to be paid, mortgagor is liable for
interest in addition to principal, but not for attorney's fees or costs.

Before WHALEY J., Richland, April, 1925.    Affirmed.

Action by H. A. Leaphart against G. A. Selby.    Judgment for plaintiff, and defendant appeals. ˙

The decree of the County Court is as follows:

The summons was served in this case December 21, 1922. The plaintiff, H. A. Leaphart, in his complaint alleged substantially that on January 14, 1915, he gave to the defendant, Gilbert A. Selby, a bond for $1,200; same being secured by a mortgage covering the property named in the complaint, and named in the mortgage, and being the property hereinafter described. The said bond and mortgage was due January 15, 1918; interest at 8 per cent. being due and payable semiannually. The complaint further set forth that the plaintiff had paid all interest until July 1, 1922, and had paid $250 on the principal; the plaintiff alleging the Barron firm of attorneys had negotiated the loan, collecting all interest, and had collected the $250 on the principal, as the agents of the defendant, Gilbert A. Selby, and the plaintiff asked in his complaint that he be allowed to pay said balance of $950 on the principal and interest at 8 per cent. from July 1, 1922, and that the bond and mortgage be canceled by the Court.

The defendant, in his answer, admitted that he was the owner and holder of the bond and mortgage for $1,200 covering said property as set forth above. He further admitted receipt of all interest till July 1, 1922, but the defendant denied the agency of the Barron firm and denied the

firm's authority to collect any part of the principal, and asked for judgment against the plaintiff in the sum of $1,200, together with interest thereon at 8 per cent. from July 1, 1922, until date of payment, attorney's fees, and costs, and that the mortgage be foreclosed and the property sold to pay said amount.

The case was referred to Hon. J. C. Townsend, Master for Richland County, S. C., who took the testimony and filed the same, together with his recommendations, on February 20, 1925. After a hearing before me, the Master under an order of this Court, took additional testimony, which was filed April 13, 1925. The facts as found by the Master were substantially as follows:

In 1914 the plaintiff bought the property herein described from L. L. Bedenbaugh (Deed Book BJ, p. 177). Richard Singleton, father-in-law of Chas. Barron, had a mortgage thereon to the amount of $1,200 (Mortgage Book BZ, p. 264).

On January 14, 1915, the Richard Singleton mortgage was taken up and the plaintiff gave a bond and mortgage to the defendant, Gilbert A. Selby, for $1,200 (Mortgage Book CN, p. 214); the Barron firm of attorneys negotiating the loan. Selby was not present when Leaphart signed the bond and mortgage. Selby did not inspect the property, and did not himself see to the insurance. Selby and Leaphart had never discussed the loan, had never had any communications between themselves about the matter, but all these matters were carried out and completed by the Barron firm. The plaintiff paid the Barron firm $22 for negotiating the loan. The bond and mortgage had printed on it the name and address of the Barron firm. The bond and mortgage has not been assigned and has been continuously in the possession of Selby since delivery to him by the Barron firm after recording.

When the first installment of interest was due in 1915, the Barron firm sent Leaphart a statement of interest, and

Leaphart paid this interest to the Barron firm and continued
to pay this interest to that firm till January 14, 1918, the
date the paper was due, and continued to pay said interest
to that firm four years thereafter till July 1, 1922; all re-
ceipts therefor being on the stationery of the Barron firm,
signed by some one of the firm.   $250 was paid on the
principal by Leaphart to the Barron firm as shown by re-
ceipts on that firm's stationery, as follows:
January  11, 1918...... $125.00  ($25.00 being interest)
December 31, 1919.....   142.00  ($42.00 being interest)
January  3, 1921.......   50.00

No credits of principal or interest were on the bond and
mortgage, although the Barron firm had paid Selby interest
on this Leaphart bond and mortgage from 1915 till July 1,
1922.   The latter had authorized the Barron firm to collect
the interest, but after the payment of $250 just noted, in-
terest was calculated on $1,200 instead of $950.   There-
after every six months the Barron firm gave Selby a state-
ment; the last statement being in the summer of 1922. and
showing the loan was still $1,200.

Leaphart and Selby had never met each other, and had
never had any communications with each other, either verbal
or written, till after July 1, 1922.   Selby had never author-
ized Leaphart verbally or by writing to pay or not to pay
either principal or interest to the Barron firm, but Selby
had authorized Barron to collect interest and had never
informed Leaphart that he had authorized Barron to collect
interest.

Selby kept all of his bonds and mortgages, handled
through the Barron firm, in his possession continuously
after delivery of them to him.   Always a member of that
firm notified him when a mortgagor desired to pay a mort-
gage debt in full, whereupon Selby satisfied same at the
firm's office and obtained the money and satisfied others at
his own office.

In the supplemental testimony taken by the Master, it

appears that the Barron firm loaned for Selby approximately $10,000 or $12,000 in 1911, and that each year thereafter this amount of investment by the Barron firm for Selby increased until the investment in 1922 was approximately $30,000; the Barron firm making 12 or 15 loans a year from 1911 until 1922.

Selby received interest on all uninvested funds from Barron; one of the statements showing Barron had uninvested funds of $4,575 on which Barron paid Selby interest.

The Leaphart bond and mortgage was due in 1918. In 1917 or 1918 Selby had bought a $4,000 mortgage from Mimnaugh, given by Millford. Selby had left said Mimnaugh mortgage with Barron to have the assignment recorded. Although he had been to Barron's office 12 or 15 times, sometimes failing to see him, and had asked Barron six or seven times for this Mimnaugh mortgage, he had never received it. Nothwithstanding the fact that Selby never received this Mimnaugh mortgage, Selby never warned Leaphart or any of his other mortgage debtors.

By agreement of counsel there was in evidence a certified copy of a letter (original now in Barron's office). This letter was written from Warrenton, Va., in 1912, by Selby to Barron, in which letter is the following: "Also please advise regarding the Boozer mortgage of $2,500, which they wanted to satisfy in June, whether this money has been reloaned and to whom, with dates, so I may make record on my mortgage ledger." The first demand for payment of the Leaphart bond and mortgage was in the answer.

There is no real dispute as to any of the material facts. The mortgagee, Selby, admits that he never had any communications, either verbal or written, from Leaphart until several years after this loan was made by the Barron firm; he never inspected the property; he never looked after the insurance. That firm loaned for him in 1911 around $10,-000 and each year thereafter this amount was increased until in 1922 the firm had in charge funds of Selby amount-

ing to approximately $30,000; Selby receiving interest from the Barron firm whether these funds were invested or not. He received through that firm the interest on the Leaphart mortgage until it was due in 1918 and continued receiving it thereafter through the same source for four years until July 1, 1922.

Furthermore, the letter written in 1912 by Selby to Barron from Warrenton, Va., leads one to believe that Selby left to Barron almost exclusively the handling of his funds, even though, after recording, the bonds and mortgages representing Selby's loans were turned over to him by the Barron firm.

It is true the authority, whether expressed or implied, to collect interest is not authority for collecting the principal or any part thereof. What authority may have existed in any given case depends, however, upon the facts in that case. The entire record herein indicates a holding out of the Barron firm on the part of Selby, as a money lender, with general authority to act. He is now without the right to assert the contrary.

It is true that as between Selby and Leaphart we are dealing with only one mortgage, but as among several mortgage debtors, of which Leaphart was one, there must be taken into consideration the general course of dealing between Selby on the one hand and the Barron firm on the other. That a general agency existed, I have no doubt.

Even if there was not such a general agency, and if both parties to this suit were innocent, still, where one of two innocent persons must suffer by the wrongful act of a third, he would be required to bear the loss who was most at fault in allowing it to be incurred.

Selby admits that he bought the Millford mortgage from Mimnaugh in 1917 or 1918 and left it with Barron to have the assignment recorded, and, notwithstanding the fact that he had been to Barron 12 or 15

times and had asked him six or seven times for this bond and mortgage, covering a period of more than a year, and was never able to get it, nevertheless, he did not warn Leaphart in 1918 or any year thereafter up to the time of Barron's death. Even if Selby up to that time had implicit faith in the Barron firm, the foregoing was sufficient to have put him, as a reasonable man, on inquiry as to Barron's acts. There was evidently cause at that time for suspicion. Neither such facts nor conclusions deductible therefrom came to the knowledge of Leaphart, nor was it probable that any such knowledge could come to him. Selby knew, or should have known, and kept silent. Had he spoken, Leaphart could have protected himself, as well as Selby. Selby is therefore now estopped from asking Leaphart to bear the loss.

It also appears to be undisputed that the balance due on the mortgage, with interest, was tendered by the plaintiff to the defendant. There is no issue made as to the manner of the tender, but same appears to have been refused by the defendant. As the money was not paid into Court or required to be paid into Court, the mortgagor is liable for the interest in addition to the principal, but not for attorney's fees or costs.

It therefore follows that the exceptions to the Master's report must be overruled.

It is ordered, adjudged, and decreed that, on payment by H. A. Leaphart to Gilbert A. Selby, or his attorneys, within 20 days from date of service hereof, of the sum of $950, together with interest at 8 per cent. from July 1, 1922, that the said bond and mortgage shall be canceled of record by the Clerk of this Court under the direction of this Court.

*Messrs. John J. Earle* and *Edward L. Craig,* for appellant, cite: *Party dealing with agent bound to inquire limit of agent's authority:* 31 Cyc., 1322 and 1325; Jones on Mortgages, 7th Ed., 964. *Authority to collect interest not authority to collect principal; agent not in possession of*

*papers:* 28 S. C., 417; 103 N. Y., 556; 75 Wis., 73; 31 Cyc., 1325 and 1368; Jones on Mortgages, 7th Ed., 964 and 974. *Authority to make loans and take security not authority to collect thereon where papers not in agent's possession:* 127 S. E., 562; 31 Cyc., 1370; Jones on Mortgages, 7th Ed., 964.

*Mr. Buford Jackson,* for respondent, cites: *Burden on appellant to show concurrent findings of fact by Master and trial Court against preponderance of testimony:* 128 S. C., 31; 127 S. C., 141; 125 S. C., 68; 125 S. C., 34; 124 S. C., 506; 123 S. C., 346; 122 S. C., 509; 122 S. C., 462; 122 S. C., 238; 108 S. C., 30; 60 S. C., 230; 45 S. C., 60; 24 S. C., 452.. *Attorney arranging loan primarily agent of lender:* 104 S. C., 156; 91 S. C., 491; 83 S. C., 521; 74 S. C., 503; 70 S. C., 41; 65 S. C., 118; 49 S. C., 356; 44 S. C., 483; 93 U. S., 385. *Case distinguished:* 122 S. E., 512. *Ratification of agent's acts:* 93 S. C., 131; 85 S. C., 44; 57 S. C., 34; 34 S. C., 538. *Principal liable for torts of agent acting within scope of his employment:* 105 S. C., 311; 65 S. C., 75. *Estoppel:* 128 S. C., 471; 124 S. C., 350; 124 S. C., 134; 111 S. C., 341; 70 S. C., 381; 57 S. C., 279.

May 20, 1926.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The appeal challenges the correctness of a concurrent finding of fact by the Master and the County Judge upon an issue of agency. A careful examination of the record does not disclose that the finding was without evidence to support it or was so clearly against the preponderence of the evidence, considered in the light of the principles of law applicable, as to require or warrant reversal by this Court.

The point here presented is not ruled in appellant's favor by the case of *Bacot v. South Carolina Loan & Trust Co.,* 132 S. C., 340; 127 S. E., 562. In that case a concurrent finding by the Master and the Circuit Judge that Kroeg, an

attorney, was not the agent, with authority to collect the principal of the mortgage debt of Opdebeeck, the owner of the mortgage, was sustained, this Court saying in that connection:

"Granting that a question of implied authority is to be determined from no one fact, but from all the facts and circumstances for which the principal is responsible, and that, under all the facts and circumstances of this case, a finding of fact that Kroeg had implied authority might possibly have been warranted, a contrary concurrent finding of fact by the Master and Circuit Judge cannot be held erroneous as a matter of law."

The converse of the foregoing observation is applicable here. The concurrent finding that the Barron firm were the agents of Selby, for the purpose of collecting the principal of Leaphart's mortgage debt, may not be pronounced erroneous as a matter of law. Nor do we think that the facts of this case are so closely assimilated to the facts either of *Bacot Case* or of the case of *Morris v. Carlisle,* 128 S. C., 417; 122 S. E., 511, as to require, under the views there announced and applied a reversal by this Court, in the exercise of its power to review the facts in a chancery case, of the concurrent finding of fact here involved.

The decree of the County Court is accordingly affirmed for the reasons therein stated.

Affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. ACTING ASSOCIATE JUSTICE R. O. PURDY (dissenting): If this opinion prevails, the cases of *Morris v. Carlisle,* 128 S. C., 417; 122 S. E., 511, and *Bacot v. Trust Co.,* 132 S. C., 340; 127 S. E., 562, are automatically overruled. The dissenting opinion of Mr. Justice Cothran declares the law to the undisputed state of facts.

MR. JUSTICE COTHRAN (dissenting): This action by the mortgagor, Leaphart, against the *mortgagee,* Selby, was in-

stituted for the purpose of determining whether the mortgagor was entitled to a credit of $250 upon the principal of his mortgage debt, which he claims to have paid to the attorneys and agents of the mortgagee, and which did not reach the mortgagee. The defendant mortgagee, while admitting that the parties to whom the mortgagor made the payment were his agents, authorized to collect the *interest* upon the mortgage, he denies that they were authorized to collect the principal or any part of it. The facts which I will detail are undisputed. The issue is whether, from these facts, the inference can be legitimately drawn that the agency was established. The case was referred to the Master and he found in favor of the mortgagor. His report was confirmed by his Honor, Judge Whaley, of the County Court, and from his decree the defendant has appealed.

It appears that the plaintiff mortgagor, Leaphart, had bought a house and lot from one Bedenbaugh, upon which there was an outstanding mortgage to one Singleton. Singleton's mortgage was in the hands of the firm of attorneys of which the late C. H. Barron was a member. Singleton was pressing for his money, and Barron, who had done quite a good deal of business in the way of negotiating loans for the defendant mortgagee, Selby, arranged a loan from Selby to Leaphart, for the purpose of taking up the Bedenbaugh mortgage held by Singleton. Accordingly, on January 14, 1915, Selby, through said firm of attorneys, made a loan to Leaphart of $1,200, evidenced by a bond payable three years after date, interest at the rate of 8 per cent. per annum, payable semiannually on January 1st and July 1st of each year. This bond was secured by a mortgage on the house and lot. Leaphart and Selby had never met; the transaction having been closed upon Leaphart's request to Barron for the loan; the money being paid by Selby to Barron and by him to Leaphart less his fee, $22. The bond and mortgage were delivered by Barron to Selby, and have ever since remained in his possession.

During the entire period of time between the date of the execution of the mortgage, January 14, 1915, and July 1, 1922, preceding the death of Barron in November, 1922, Leaphart paid to Barron the installments of interest as they became due, $48 semiannually. These payments were remitted by Barron to Selby; he and Leaphart having no communication with each other. Leaphart also made the following payments to Barron, upon the principal of the debt: January 11, 1918, $100; December 31, 1919, $100; and January 3, 1921, $50. These payments were not remitted by Barron to Selby; the debt thereafter being reported to Selby as being $1,200, and regular remittances of semiannual installments of interest, $48, being made by Barron to Selby.

Leaphart testified as follows:

"The Barron firm did all the negotiations leading up to the loan, as I did not know Mr. Selby; had never met him. He did not inspect the property; he was not present when the bond and mortgage was signed; he did not instruct me to pay or not to pay Barron; and there was no communications between myself and Selby, either verbal, written or otherwise, until seven years after I had signed the bond and mortgage. A day or two before Barron always sent me a statement of interest due, and without any instructions one way or the other from Selby, I paid Barron interest twice a year till paper was due on January 14, 1918, and without any instructions from, Selby one way or the other, I continued to pay Barron four years after the bond and mortgage was due, that is, till July 1, 1922, and also paid him without any instructions one way or the other from Selby, $250 on the principal, and there is now due $950. Selby did not tell me to pay or not to pay Barron interest or principal."

The defendant, Selby, testified that he had invested a good deal of money, some $25,000, in bonds and mortgages, during the last 15 or 20 years, 32 in number; that these in-

vestments were made through the Barron firm; that when they had a good loan he would be notified and, if satisfied by their statements, the loan would be made; that he had authorized Barron to collect the interest, but had authorized no one to collect the principal, or any part of it; that the bonds and mortgages were delivered to him and always thereafter kept in his possession; that Barron had not at any time collected any part of the principal of the mortgages for him; that whenever a mortgagor desired to pay a loan he would be notified from Barron's office, and they would either come to his (Selby's) office, or he would go down to theirs, and satisfy the paper when the money was paid to him; that he would at times turn the money over to Barron for reinvestment, and pending reinvestment Barron would pay him interest upon it; that when such reinvestment would be made Barron would deliver the loan papers to him; that at no time had Leaphart notified him of having paid a part of the principal to Barron. This is practically the whole evidence upon the issue of agency.

The Master held that—

"Under numerous decisions of our Court the Barron firm was the agent of the borrower and the lender. Several cases make the further ruling that under such circumstances attorneys are especially agents of the lender."

He further held that the failure of Selby to return to Leaphart the money which Barron had collected and remitted to him, for a period of seven years, was sufficient in law to continue the agency and amounted to a ratification of the agency. The money so collected and remitted was for the *interest* which Barron was authorized to collect. How those collections would constitute agency for the collection of the *principal,* or any part of it, is certainly "in nubibus." He concludes that Selby was guilty of the greater negligence, in that he received the interest for seven years, which he was entitled to, had authorized Barron to collect and now makes no claim for; that Selby had not re-

turned or offered to return any part of the interest so collected, although he knew that Leaphart was paying it.   Why should he have returned any part of it?   How the failure to return that which was his, which Barron had authority to collect, and which Leaphart was under obligation to pay, can be evidence of Barron's agency to collect what he was not authorized to collect, and which he had never paid to Selby that he might be in a position to return it, can be deemed negligence on the part of Selby or evidence of ratification, is beyond my comprehension.

His Honor, the County Judge, confirms the Master's report in a decree which, however, does not mention the ground upon which the Master reached his conclusion.

The decree appears to be based upon these grounds:   (1) That Selby had committed to Barron the handling of his funds, which I assume was intended to include the authority to collect the principal of the mortgage debt; (2) that Selby held Barron out as a money lender, with general authority to act, which also I assume was intended to include the authority to collect the principal of the mortgage debt; (3) that the payment of a part of the principal by Leaphart to Barron was in effect caused by Selby's not communicating to Leaphart, well-grounded suspicions entertained by him as to the upright dealing of Barron, and that he, being more greatly at fault, should bear the loss.

As to the first ground:   There is but a scintilla of evidence to sustain the charge.   The course of dealing between Selby and Barron is clearly set forth in the testimony of Selby, and it is uncontradicted by a single witness. Selby had money to lend, and, as is done in hundreds of cases, he selected an attorney, who was largely engaged in procuring and securing loans on real estate, to invest surplus funds in his, not Barron's, hands, to pass upon the security offered, and to close the transaction.   Barron was authorized to collect the interest as it fell due, and that was all. The papers remained with Selby, and were satisfied upon repayment of the loans to Selby.

The only circumstance invoked to establish the charge is a letter written by Selby to Barron from Warrenton, Va., in which he inquires about the interest which was due upon another loan, and whether the proceeds of another loan had been reinvested. (Let this letter be incorporated in the report of the case.) The portion of it referring to the Boozer mortgage might sustain the inference that Barron had authority to collect this mortgage and reinvest the proceeds. It is the only instance of that character produced and doubtless is explainable upon the ground of his absence from the state and an authority limited to this particular loan. It is at least not of sufficient weight to overcome the great preponderance of the evidence to the contrary.

It is significant that there is no evidence that Barron had authority from other mortgagees, or was accustomed, to collect the principal of other mortgages representing loans made by him; and, if there had been, it would have been incumbent upon Leaphart to establish his familiarity with such custom. He can hardly be said to have been misled by a custom that he knew nothing about. The truth is that Leaphart assumed that Barron had authority to receive payments upon the principal, without making the slightest inquiry, and without the slightest inducement upon the part of Selby. It seems hard that Leaphart should be required to pay the $250 again; but the evidence shows that he was guilty of negligence in making the payments and that Selby was not. It would be equally hard, if not harder, to hold Selby liable for the mistake of Leaphart, for which he was in no wise responsible.

In *Smith v. Kidd,* 68 N. Y., 130; 23 Am. Rep., 157, it is said:

"Any other principle would be dangerous in the extreme. If the fact that a capitalist makes investments on bond and mortgage through an attorney, and employs him to collect the interest, and in special cases authorizes him to collect the principal of particular mortgages, is sufficient to warrant

a finding of a general authority to collect the principal of all
the mortgages of the client, notwithstanding that the client
takes the precaution to retain his securities in his own pos-
session, no investor would be safe."

As to the second ground: His Honor correctly held,
"It is true that the authority, whether expressed or implied,
to collect interest, is not authority for collecting the princi-
pal or any part thereof"; but he adds: "The entire record
herein indicates a holding out the Barron firm on the part
of Selby as a money lender with general authority to act.
He is now without the right to assert the contrary."

It is to be presumed that everybody, including Leaphart,
knew the fact that the Barron firm was so engaged. It
was not necessary for Selby to "hold out" that fact; and,
if it was a fact, I do not see that the "general authority to
act," which I assume was intended to include the authority
to collect the principal of a loan, made under the circum-
stances here developed, could, by any stretch of the power
of inference, be held to authorize such collection. Cer-
tainly in view of the undisputed evidence that Barron did
not have that authority, it is too weak an inference to over-
come that evidence.

As to the third ground: This ground is based upon the
slender foundation that because Barron had in his posses-
sion a mortgage by one Millford, which had been assigned
to Selby, and Selby had to make a number of trips to Bar-
ron's office to get it, Selby should have notified Leaphart
not to make any payments of either principal or interest to
Barron.

I think it is a sufficient answer to this proposition to say
that, as Selby had not authorized Barron to collect any part
of the principal, he was not supposed to fear that he would
do so, and was therefore under no obligation to notify Leap-
hart not to do what he was under no obligation to do; to pay
what Barron had no authority to collect. As to the collec-
tion of the interest, Selby had certainly no ground of sus-

picion which would have induced him, or did induce him, to withdraw his business from Barron, for the collection and remittance of interest continued after the Millford incident, · as before.

The principle is familiar, of course, that, when one of two innocent parties must suffer by the wrong of a third party, he must suffer who has placed it in the power of such third person to do the wrong. This rule, it is manifest, cannot apply where the person claiming the benefit of it has himself supplied the opportunity of wrong, as Leaphart did in this case.

The evidence shows that Barron received the payments on the principal when he had no authority to do so; that he deceived Selby by afterwards rendering statements showing that the principal debt had not been reduced by partial payments, and continued to remit the semiannual interest of $48 as if the debt remained $1,200. His conduct constituted a fraud upon Leaphart, a tort for which he might have been sued. It has been established that a principal is not responsible for the tort of his agent, unless his conduct was within the actual scope of his authority; there being a difference between the responsibility of a principal for the contracts of his agent, and for his torts. In the one case the principal is liable if the act was within the *apparent* scope of the agent's employment, while in the other it must have been within the *actual* scope.

In *Goble v. Express Co.,* 124 S. C., 19; 115 S. E., 900, it is said:

"Hence a principal cannot be held liable in damages for the tort of his agent unless the agent was at the time acting within the actual scope of his agency."

I think therefore that, considering the question of agency in this case to be one of fact, the overwhelming preponderance of the evidence sustains the conclusion that Barron was not the agent of Selby to receive the principal of the mortgage debt or any part of it.

The rule in chancery cases as to a review of the Court of a finding of fact by the lower Court has been firmly settled ever since the case of *Finley v. Cartwright,* 55 S. C., 198; 33 S. E., 359, where it is declared:

"It may now be regarded as settled that this Court may reverse a finding of fact by the Circuit Court [in a chancery case, I interpolate], when the appellant satisfies this Court that the preponderance of the evidence is against the finding of the Circuit Court"—followed in a dozen or more cases.

In my opinion, however, the question of agency is not, in this case, one of fact, but of law.

The trial Judge held: "There is no real dispute as to any of the material facts"—a statement entirely borne out by the record; and, of course, a conclusion from such conceded facts, is obliged to be a conclusion of law. There can be no issue of fact, no finding of fact, where there is no dispute as to the fact. The appeal presents squarely the question whether the conclusion of law reached by the lower Court, from those admitted facts, can be sustained, unaffected by any primary presumption that the conclusion was right.

Authorities could be multiplied without limit to the effect: (1) That it is fundamental that the power of an agent to bind the principal rests upon the authority conferred upon him by the principal; (2) that one, who makes payment to an agent, must at his peril ascertain whether the agent had authority to receive payment; (3) that a debtor owing money on written security, who pays it to another as the agent of the holder of the security, must see that the person so paid is in the possession of the security, or has authority, or has been represented by the creditor as having authority, to receive such payment; (4) that the authority to collect the interest upon a mortgage does not authorize the agent to receive payment in whole or in part of the principal debt. 31 Cyc., 1322, 1325, 1368, 1371; C. J., 621. *Morris v. Carlisle,* 128 S. C., 417; 122 S. E., 511. *Bacot v. Trust Co.,* 132 S. C., 340; 127 S. E., 562.

Nowhere is the law more clearly stated than in 1 Jones on Mortgages (6th Ed.), § 964:

"In making payments to an agent the mortgage debtor should be assured of his continued authority to act for the owner of the mortgage; and such assurance of this as may be derived from his possession of the mortgage note or bond and indorsement thereon of the payment would be omitted only through great negligence. Authority of an agent to receive interest or principal on a mortgage cannot be inferred from the fact that the agent had collected and paid over to the mortgagee interest on other mortgages. Even authority to collect the interest upon a mortgage does not afford ground for inferring authority to collect the principal, where the agent is not intrusted with the possession of the securities. The mortgagor is bound to know the extent of the agent's authority. If he pays the principal to an agent, he must be prepared to prove express authority. He pays to an agent at his peril. The agent's own declarations as to his agency cannot be accepted. The rule has been generally adhered to in the adjudged cases that the possession of the securities by the agent is the indisputable evidence of his authority to collect the principal."

In the case of *Morris v. Carlisle*, 128 S. C., at page 417; 122 S. E., 511, this Court held that authority to collect interest on a mortgage when it fallls due carries no authority to collect on the principal. In this case the mortgage was made to the bank and assigned by the bank to Mrs. Morris. Payments were made on the principal to the bank when the bank did not have actual possession of the papers, and the Court held, that the mortgagor was the more negligent and that the payments made to the bank on the principal were not payments to Mrs. Morris.

In *Bacot v. South Carolina Loan & Trust Co.*, 132 S. C., 340, 344; 127 S. E., at page 562, the Court says:

"The only facts tending to establish that Kroeg was actually the agent of Opdebeeck and from which his authority

S. C. Cotton Growers Co-op. Assn. *v.* English   19

Spring Term, 1926

to act for Opdebeeck in collecting the principal of the bond could be implied, were the facts that he represented Opdebeeck in making this and other loans and acted for him in receiving the interest from the mortgagor. That these facts do not as a matter of law require the conclusion that Kroeg had implied authority to collect the principal of the loan is well settled. 'The fact that an agent makes or negotiates the contract, such as the negotiation of a loan, gives him no implied authority to receive payment thereunder, unless he has possession of the evidence of indebtedness.' "

We have in the case at bar unquestionable evidence: (1) That Barron did not have authority to collect the principal or any part of it; (2) that Leaphart made payments on the principal to Barron without the slightest inquiry as to his authority to receive them; (3) that Barron never had possession of the bond and mortgage longer than was necessary to transmit them to Selby—and an entire absence of evidence that Selby knew of such payments or did the slightest act to induce Leaphart to make them.

I think, therefore, that the judgment should be reversed, and the case remanded to the County Court, with directions to render judgment of foreclosure for the full amount, called for by the defendant's mortgage, with interest and reasonable attorney's fee.

Mr. Acting Associate Justice R. O. Purdy concurs.