17212

MARTHA W. TWITTY, Appellant, v. G. M. HARRISON, Respondent
(95 S. E. (2d) 879)

*Messrs. A. F. Woods,* of Marion, *and Paulling & James,* of Darlington, *for Appellant,*

*Messrs. James P. Mozingo, III, and John L. Nettles,* of Darlington, *for Respondent,*

Messrs. *A. F. Woods,* of Marion, *and Paulling & James,* of Darlington, *for Appellant,*

October 30, 1956.

TAYLOR, Justice.

This appeal comes from the Court of Common Pleas for Darlington County where appellant brought an action to foreclose a mortgage of real estate. The defendant, respondent, pleaded payments to Samuel Want, who it is alleged was plaintiff's agent authorized to receive same. Judge Lewis, before whom the case was tried, found for the defendant on the issue of agency, held that the mortgage obligation had been paid in full, and ordered the mortgage cancelled of record. From that decree comes this appeal which will be determined by resolving the question of whether or not the evidence preponderately established Mr. Want's agency.

Except where the facts have been settled by a jury, whose verdict has not been set aside, it is the duty of this court in equity cases to review challenged findings of fact as well as matters of law. Const. 1895, Article V, Section 4; *Bates v. Bates,* 213 S. C. 26, 48 S. E. (2d) 612; *Little v. Little,* 215 S. C. 52, 53 S. E. (2d) 884; *Gilbert v. McLeod Infirmary,* 219 S. C. 174, 64 S. E. (2d) 524, 24 A. L. R. (2d) 60. But such duty on our part does not require that we disregard the findings below, or that we ignore the fact that the trial Judge who saw and heard the witnesses is in better position than this court to evaluate their credibility; nor does it relieve the appellant of the burden of

convincing this court that the trial Judge committed error in his findings of fact. *Cogswell v. Cannady*, 135 S. C. 365, 133 S. E. 834.

On December 31, 1952, respondent Harrison executed and delivered to Darlington County Bank & Trust Company his promissory note in the amount of $2,500.00 payable in ten consecutive quarterly installments of $250.00 each, the first being payable on March 31, 1953, together with interest on the principal balance remaining from time to time unpaid, at the rate of 6 per cent per annum, payable quarterly, from the date of the note. On the same date, as security for its payment, he executed and delivered to the said bank his mortgage of certain real estate in Darlington County. The note and mortgage provided that default in the payment of interest, or of any installment of principal, should render the whole amount of the obligation immediately due and payable at the option of the mortgagee; and further provided that the obligor should have the right "to pay the whole of the said indebtedness, or any part thereof in excess of the payments hereinabove stipulated, on any installment paying date." The mortgage was recorded on January 3, 1953.

The late Samuel Want, Esq., a prominent attorney of Darlington, was engaged extensively in handling loans on real estate; and at the time mentioned was President of Darlington County Bank & Trust Company. Mr. Harrison testified that he went to Mr. Want to borrow the money in question, and that the mortgage above mentioned was executed in Mr. Want's law office. On February 3, 1953, the said note and mortgage were assigned by the bank, without recourse, to the appellant Twitty. Thereupon the amount of the obligation was charged on the bank's records to the account of "Samuel Want, Attorney"; and opposite the ledger entry of the transaction appears a notation in the handwriting of Mr. D. W. Horton, then Cashier: "Taken up by Mr. Want," and another, also in Mr. Horton's handwriting, "Transferred to Martha W. Twitty." Mr. Horton testified

that he made the first of these notations on February 3, 1953, and the other at some later date.

Mrs. Twitty testified that the consideration for the assignment to her was the full amount of the obligation as of February 3, 1953, and that this consideration was paid by her cancellation of a prior mortgage which she held over the same property, and by her check for the difference between the balance owing her on the old mortgage and the amount of the new mortgage obligation, this check being in the amount of $1,563.34, dated February 7, 1953, drawn on her savings account in the Citizens Bank of Darlington, and made payable to the order of "Mr. S. Want."

The prior mortgage of Harrison to Twitty was dated September 22, 1951, and was in the amount of $2,250.00, payable $250.00 on the 22nd day of each third month, for twenty-one months, with a final payment of $500.00 two years from date, and interest was at 6 per cent, payable quarterly. This mortgage appears to have been originally made out to Darlington County Bank & Trust Company, and to have been purchased by Mrs. Twitty on November 21, 1951. Mr. Want's ledger record of the mortgage shows the following payments of principal and interest made by Harrison:

"12/22/51          Principal—Paid by      $250.00
                   Interest  Harrison         33.75
     250 retained on investment
     22.13 int. deducted from $30 due
     Mrs. Twitty—$7.87 Rem.
                         3.75 to S. W.
  3/19/52          Principal—Paid by      $250.00 ⎫ Rem.
                   Interest  Harrison         30.00 ⎭
  6/19/52          Principal—Paid by       250.00 ⎫ Rem.
                   Interest  Harrison         26.25 ⎭
  9/20/52          Principal                500.00 ⎫ Rem.
                   Interest                   22.50 ⎭
 12/24/52          Principal                250.00 ⎫ Rem.
                   Interest                   15.00 ⎭
                   Balance principal       $750.00
                   Paid in full and rem."

In reference to the mortgage here involved, Mrs. Twitty testified that on January 7, 1953, she told Mr. Want "that I am leaving the decision in regard to the Harrison mortgage in your judgment." She also testified that she received from Mr. Want three checks payable to her order, of the dates, in the amounts and bearing notations, as follows:

"April 1, 1953, $287.50, G. M. Harrison, Prin. $250.00
Int. 37.50

June 30, 1953, 33.75, G. M. Harrison, Int.
July 10, 1953, 250.00, G. M. Harrison, Prin."

Mr. Want's ledger record shows the following payments to him by Harrison:

"4/ 2/53, Pd. by Harrison, Prin. $250.00
Int. 37.50 3 Mos. } Rem.

6/30/53, Pd. by Harrison, Int. 33.75
Only } Rem.

7/10/53, Pd. by Harrison 250.00 } Rem.

9/25/53, Pd. by Harriston to
S. Want 2030.00
Balance prin. 2,000.00
Int. 30.00"

It is undisputed that the payment of $2,030.00 above referred to was not remitted by Mr. Want to Mrs. Twitty.

Mrs. Twitty testified that Mr. Want had made collections on the Harrison mortgages and on other mortgages in which he had invested money for her, and had remitted such collections, of both principal and interest, to her; but she denied that he was her agent, and testified that she thought he was sending such payments to her as a matter of convenience for the borrowers, his clients. From the time of the delivery of the note and mortgage to her, in February, 1953, she kept them in her safe deposit box in the Citizens Bank of Darlington, and at no time after delivery to her were they in Mr. Want's possession. She had known Mr. Want for quite a long time and occasionally wrote him with regard to his making investments for her. He was very kind and helpful,

but she never considered him her agent. At no time did she have any business dealing directly with Mr. Harrison until February 15, 1954, after Mr. Want's death, when she wrote him requesting that future payments on the mortgage obligation be made to her. At the time of the delivery to her of the note and mortgage there appeared on the assignment a notation of its having been recorded; and through this notation diagonal lines had been drawn and a marginal note written by the Clerk of Court reading "Assignment entered in error." This notation and marginal note had been made without her knowledge or authority. The assignment was subsequently recorded on February 12, 1954.

Upon cross-examination, appellant testified in part as follows:

"Q. Did you ever give Mr. Want authority to collect any mortgage payment for you? A. Not that I—you mean in writing?

"Q. Or orally, either one? A. Well he—I thought he was—

"Q. I'm asking you—A. Paying me for his client, see?

"Q. I'm asking you this, Mrs. Twitty, did you ever give him any authority to collect at any time any payment from mortgagors for you? On mortgages held by you? A. I assume I did because the payments as a rule came from his office

"Q. Now, will you tell me—do you recall which one you gave him that permission in? A. No, I don't.

"Q. How many mortgages has Mr. Want handled for you, Mrs. Twitty? A. Quite a few.

"Q. Do you have any idea the number? A. No.

* * *

"Q. Suppose you give me the details of the transaction between yourself and Mr. Want with reference to Mr. Harrison's second mortgage. A. Mr. Want wrote me a letter while I was visiting my son in which he asks me to make this additional loan to Mr. Harrison.

"Q. You had personally written him asking him to make investments for you? A. Not at that time.

"Q. But over a period of years you had repeatedly written him, had you not? A. No, I don't think I had.

"Q. You don't think you had. A. I know that I did write him requesting investments.

"Q. And you were requesting any investments, or would you request particular investments? A. I requested particular investments and I always held the reins myself.

"Q. Did what? A. I passed on the investments myself.

"Q. You never left it up to Mr. Want's judgment? A. Well, in the case of Mr. Harrison's mortgage I did because that was an additional amount.

\* \* \*

"Q. These mortgages that would come to you, how would you get them? A. Go to the office and pay for them and get them.

"Q. How did you know that Mr. Want had them? A. He wrote me that he had them.

"Q. Well, how did you find out that he had those mortgages for sale? A. Because I ask him for investments.

"Q. Because you ask him for investments? A. He was selling his clients' (securities) as I assumed, and I was in the capacity of lending the money.

"Q. Did you ever have your own attorney—if Mr. Want represented the other mortgagors—, did you ever have your own attorney check any titles for you? A. I had implicit faith in Mr. Want's judgment as to titles and as a rule he investigated.

"Q. And you had implicit faith in the way he handled your investments, is that correct? A. Well, I wouldn't have gone to him if I didn't have faith in him.

\* \* \*

"Q. It never occurred to you then that you were letting— that Mr. Want was collecting these mortgage payments for you? A. Well, of course I knew he was collecting.

"Q. For you? A. Yes.

"Q. And knowing that you never notified anyone to make payments direct to you? A. Yes, I did as soon as I found out that Mr. Harrison didn't know that I held the mortgage then I wrote him to make payments to me.

"Q. And that was after Mr. Want's death, was it? A. Yes."

It is undisputed that the installments of principal and interest due on March 31, 1953, and June 30, 1953, respectively, were paid by Mr. Harrison to Mr. Want and remitted by the latter to Mrs. Twitty. It is further undisputed that on September 25, 1953, Mr. Harrison paid to Mr. Want $2,030.00, being the balance of principal, $2,000.00, plus interest for the quarter ending September 30, 1953, and that this payment was not remitted by Mr. Want to Mrs. Twitty.

The issue of whether, in the handling of payments made to him by Mr. Harrison on the latter's mortgage obligation to Mrs. Twitty, Mr. Want was the agent of Mr. Harrison or of Mrs. Twitty, is a factual one, to be resolved not from the opinions of the respective parties as to Mr. Want's agency, but from the circumstances of the transaction. As revealed by Mrs. Twitty's testimony before quoted, these circumstances in our opinion warranted the trial court's finding that in making these collections Mr. Want was in fact the agent of Mrs. Twitty; and in that finding we therefore concur.

There was testimony offered by the respondent, and admitted over appellant's objection, to the effect that during many years prior to the transaction here involved Mr. Want had made mortgage loans for Mrs. Twitty to numerous persons, and had collected and remitted to her payments made thereon. Objection to such testimony was upon the ground that these transactions were privileged communications; and it was, we think, properly overruled for two reasons: (1) The testimony was offered not for the purpose of proving the details of the transactions, but to prove the relationship of Mr. Want to Mrs. Twitty in them;

and (2) Mr. Want's handling of such collections was not a matter peculiarly within the province of an attorney at law, and consequently was not within the rule of privilege. 58 Am. Jur., Witnesses, Section 480, page 268. See also *Branden & Nethers v. Gowing,* 7 Rich. 459, 41 S. C. L. 459.

Appellant further contends that, since there is no evidence that Mr. Harrison knew of these transactions, he cannot claim that because of them Mrs. Twitty is estopped to deny Mr. Want's general authority as her agent to make collections on mortgage obligations held by her. But the issue as resolved by the lower court was of actual, not of apparent, agency; and hence Mr. Harrison's knowledge or ignorance of such other transactions was immaterial.

Unfortunate situations of the character here involved have occasioned many decisions by this court. Since each was, of necessity, based upon the facts of the particular case, they fall into no set pattern; and extended review of such decisions would serve no useful purpose. Brief reference to some of the cases will indicate the impossibility of drawing from them a categorical solution to the problems arising in others, including the one at bar, for the problems are essentially factual rather than legal.

There can be no doubt, as pointed out in *Morris v. Carlisle,* 128 S. C. 417, 122 S. E. 511, that the defense of payment is an affirmative one, and that in the case at bar, therefore, the burden is upon the mortgagor to prove that Mr. Want, to whom he made payment, was the mortgagee's agent. In *Morris v. Carlisle,* however, where the mortgagor relied upon payment made by him to the president of the bank to which the mortgage was originally given, but which had assigned it to the plaintiff without notice to the mortgagor, there was no claim that the bank president had actual authority from the holder of the mortgage, and the claim of apparent authority was based solely upon his agency to collect interest. It was there held that au-

thority to collect interest on the mortgage debt carried no implied authority to collect the principal.

In *Bacot v. South Carolina Loan & Trust Co.,* 132 S. C. 340, 127 S. E. 562, this court considered itself bound to affirm, because of concurrent finding of fact by the master and the circuit Judge, that the delinquent attorney was not the agent of the mortgagee. In that case, too, the assignee of the bond and mortgage testified that he had never authorized the attorney to collect payments of principal; and the contention on appeal was based not upon actual, but upon the doctrine of implied, authority.

In *Leaphart v. Selby,* 135 S. C. 1, 133 S. E. 451, although, as here, the mortgagee kept in his possession continuously all of the numerous bonds and mortgages in which he had invested through a firm of attorneys, the lower court, affirming the Master's report, held that the general course of dealing between the mortgagee and that firm in relation to loans to the respondent and other borrowers, indicated a general agency of the firm to handle such mortgage loans, including authority to collect principal and interest. On appeal, this court, distinguishing the cases of *Bacot v. South Carolina Loan & Trust Co., Supra,* and *Morris v. Carlisle, supra,* on the facts, declined to disturb the concurrent finding below.

In *Land v. Reese,* 136 S. C. 267, 134 S. E. 252, 253, 255, another case arising from the defalcation of the attorney involved in *Leaphart v. Selby,* the Master reached a contrary result, but was reversed by the Circuit Judge, whose decree was adopted as the opinion of this court. On petition for rehearing, Mr. Justice Blease, speaking for a majority of the court, said: "I think, regardless of all presumptions, that if it is established that a person had authority to collect principal on a mortgage debt for the holder of the mortgage, it matters not who had possession of the papers. The agency to collect the principal is the question. That agency is a question of fact, depending upon the proof in the case."

In *Federal Land Bank of Columbia v. Ledford,* 194 S. C. 347, 9 S. E. (2d) 804, this court, reversing the circuit decree, upheld the Master's finding that where an attorney had died without having remitted to the lender the proceeds of a draft sent to him by the borrower to be applied against the loan, the evidence was insufficient to establish agency by estoppel. In that case there was no proof that the attorney, in receiving payments from mortgagors and turning them over to the plaintiff's representative, had acted as the plaintiff's agent, or that any such holding out had come to the knowledge of the defendants.

As before stated, the determinative issue in the case at bar is whether or not Mr. Want, in collecting the payments of principal and interest on Mr. Harrison's mortgage obligation, was in fact acting as the agent of Mrs. Twitty. The court below having found actual agency, and such finding having, in our opinion, ample support in the evidence, the fact that Mr. Harrison may have been negligent in not requiring Mr. Want to produce the mortgage at the time of the final payment to him, is immaterial. *Land v. Reese, supra.* Nor are we persuaded that Mr. Harrison's failure to obtain and promptly record a satisfaction of the mortgage requires reversal here; for if Mr. Want was in fact Mrs. Twitty's agent empowered to receive the money from Mr. Harrison, its payment to him was as effectual, so far as she is concerned, as if it had been made to her personally.

A case at law is a serious effort to administer justice, keeping in mind the established rules of law and the prior decisions of the courts, and we are of the opinion that under the facts heretofore related, the judgment of the Circuit Court should be affirmed; and it is so ordered. Affirmed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.