JERKOWSKI v. MARCO.

1. FINDING OF FACT.—THIS COURT may reverse a finding of fact by Circuit Judge, when appellant satisfies it, that the preponderance of the evidence is against the finding of the Circuit Judge.

2. IBID.—INSANITY.—MORTGAGOR found to be sane at time of execution of mortgage.

3. EVIDENCE—INSANITY.—EXPERT TESTIMONY cannot be relied on in insanity cases as much as that of eyewitnesses to the acts of the party. (*Dictum.*)

4. A WITNESS which a party is compelled to call, is not his, in the sense that he cannot contradict or discredit him.

5. FRAUD—STATUTE OF ELIZABETH.—A mortgage given for greater amount than due, but accompanied with a paper executing by the mortgagee, stating amount due, left with mortgagor and his wife, and all debtor's property not being included in mortgage, is not a fraud against creditors, under Statute of Elizabeth.

Before WATTS, J., Darlington, January, 1899. Affirmed.

Action by Lewis Jerkowski, Harry E. Moss, and Emanuel Blumensteil, executors of Samuel Jerkowski, against Manuel

Marco, and judgment creditors and mortgagees of this defendant. Defendants, Manuel Marco and J. H. Parker, appeal.

*Mr. W. F. Dargan,* for appellant, Marco, cites : *As to deed of insane person:* 4 Rich. Eq., 368; 15 Wall., 9; 94 U. S., 371.

*Mr. Asher D. Cohen,* for Parker, appellant.

*Messrs. Wilcox & Wilcox,* also for Parker, appellant, cite : *As to reversing finding of fact:* 51 S. C., 363, 420; 45 S. C., 508; 47 S. C., 347; 51 S. C., 505, 49; 49 S C., 62. *As to degree of insanity necessary to vitiate a contract:* 25 N. Y., 9; 1 Spear, 574; 15 Wall., 9; 4 Rich. Eq., 368; 46 S. C., 188; 18 S. C., 123. *As to ratification of contract of insane person:* 51 N. Y., 383; 20 Fed. R., 756; 67 Fed. R., 399; 6 Ore., 105; 76 Fed. R., 510. *As to mortgage being fraud against creditors:* 27 S. C., 286; 2 Bail., 324.

*Messrs. Ward & Spears,* for plaintiffs, contra, cite : *As to insanity of mortgagor:* 88 Mich., 293; 104 Ala., 642; 47 Ala., 221; 4 Cow., 207; 42 Am. R., 142. *As to this Court's reversing finding of fact below:* 1 S. C., 325; 3 S. C., 561; 9 S. C., 199; 24 S. C., 271.

April 16, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This was an action to foreclose a mortgage on real estate, bearing date the 15th day of March, 1893, given by the defendant, Marco, to secure the payment of his bond to the plaintiff's testator, bearing even date with the mortgage, conditioned for the payment by the said Marco to said testator, Samuel Jerkowski, of the sum of $16,000, on or before the 15th day of March, A. D. 1898, with interest from date at the rate of eight per cent. per annum, payable annually upon said principal sum until paid. The defendant, Marco, one of the appellants herein, while

admitting in his answer that he signed the said bond and mortgage, alleges that he was at that time a person of unsound mind, incapable of making a contract, and for that reason denies his liability under said bond and mortgage. The only other appellant, the defendant, James H. Parker, in his answer, sets up two defenses—the first being the same as that set up by his codefendant, M. Marco, and second, that the bond and mortgage are void under the Statute of Elizabeth; he alleging that he is a creditor of the said Marco to a large amount, having obtained a judgment in the United States Court, which was duly entered in that Court on the 2d day of July, 1895, and was also duly entered in the Court of Common Pleas for the county of Darlington on the 3d of July, 1895.

It was referred to the master to take the testimony and report the same to the Court, and upon the testimony so taken and reported the case was heard by his Honor, Judge Watts, who rendered his decree overruling both of the defenses set up in the answers, and rendering judgment for the foreclosure of the mortgage. From this judgment the defendants, Marco and Parker, alone appeal—the former upon the ground that the Circuit Judge erred in holding that said Marco, at the time he executed said mortgage, was not insane, but had sufficient mental capacity to enable him to perform such an act, and the latter upon the same ground, and also upon the additional ground that even if Marco had, at the time, sufficient mental capacity to enable him to bind himself and his property by the bond and mortgage, yet the transaction was void under the Statute of Elizabeth, because entered into with an intent to hinder, delay and defeat the other creditors of the said Marco.

So that this appeal raises two questions: 1st. Whether Marco had been shown by the preponderance of the evidence to have been mentally incapacitated, at the time of the execution of the bond and mortgage, to perform such an act. 2d. If not, whether the transaction has been shown by the preponderance of the evidence to be in violation of the Statute

of Elizabeth, because entered into with an intent to hinder, delay or defeat other creditors.    Both of these questions turn largely, if not entirely, upon the testimony, as there is but little, if any, dispute as to the law.    While there has been, heretofore, some difference of opinion amongst the members of this Court as to the rule which should govern in reviewing the decision of the Circuit Court as to a question of fact, since the case of *Finley* v. *Cartwright,* 55 S. C., 198, it must now be regarded as settled, "that this Court may reverse a finding of fact by the Circuit Court when the appellant satisfies this Court that the preponderance of the evidence is against the finding of the Circuit Court."    Guided by this rule, we will proceed to inquire whether the appellants have been able to show that the conclusions reached by the Circuit Judge upon either of the above stated issues is against the preponderance of the evidence.    We have carefully examined the testimony which is fully set out in the "Case," in the light of the arguments of counsel, and after mature consideration, we are bound to say that the appellants have failed to satisfy this Court that either of the conclusions reached by the Circuit Judge is against the preponderance of the testimony.    We do not propose to go into any elaborate or extended discussion of the testimony, as such discussion would be of no value as a precedent; but will confine ourselves to some of the more salient points brought out by the testimony.    1st. As to the mental capacity of Marco, on the 15th of March, 1893, the day on which the bond and mortgage were executed.    The first thing that strikes our minds is, that if Marco was insane, as it is claimed by the appellants, and had been so for months previous, it is very extraordinary that no steps had been taken or even suggested by any one, so far as.the testimony shows, towards having him declared a lunatic, and incapable of governing himself or his affairs. Here was a man in possession of a large amount of property, engaged in very large mercantile and planting operations, with a wife and children, surrounded by friends and rela-

tives, and yet no steps taken or even suggested by either relative or friend looking to the preservation of his property. It is well nigh incredible, that if his relatives and friends really believed that he was insane, that they should have quietly stood by and allowed him to recklessly waste his property—sometimes giving his money away to a negro who happened to be passing by his store, as one of the witnesses testified. It can only be accounted for upon the theory which seems to have been adopted by the Circuit Judge, that Marco was not really insane, but from the excessive use of spirituous liquors he, like other persons subjected to the same influences, had become irritable and reckless, and would at times do foolish acts, which a sober, temperate man would never think of doing. The undisputed fact that on more than one occasion his friends attempted to get him to go to a Keeley Institute, where persons are treated for inebriety only and not for insanity in any of its forms, corroborates the theory that Marco was not suffering from insanity but from inebriety merely. Coming more particularly to the testimony mainly relied upon by the appellants to show that Marco was insane at the time he executed the mortgage to the plaintiff's testator, the first thing we have to observe is that this testimony is mainly "opinion testimony," and while this kind of testimony may be competent, it is never very satisfactory, especially in questions of insanity, for the obvious reason that insanity is a very obscure subject; and experience shows that the brightest and most experienced Alienist is not unfrequently entirely mistaken in the opinion which he forms as to the sanity or insanity of a person of whom he is called on to speak. This very case affords a striking illustration of this. The only real expert examined as a witness in this case, Dr. Corbett (for Dr. Galloway disclaims being an expert in cases of insanity), gives, as his decided opinion, that Marco when he first applied for admission into the Keeley Institute (which was in the spring, probably in May, 1893,) was mentally deranged, and that the character of his mental derangement was de-

mentia in its secondary form; and in another part of his testimony he says that dementia, especially after it reaches its secondary form, is incurable; that it is progressive, slow but sure; and that true dementia does not get materially better. Now, in flat contradiction of this expert's opinion, emphatically pronounced, we have the unimpeachable testimony of such intelligent and disinterested witnesses as R. W. Boyd and J. T. Rhame, that, after the time when Marco was pronounced an insane person, suffering from dementia in its secondary form, they had business transactions with Marco in which he displayed sufficient mental capacity; that he remembered the giving of the mortgage to Jerkowski; that on its face it called for more than was really due, as was explained to Mr. Rhame by Marco; and then, too, the further fact, which is undisputed, that one of these appellants was, at the very time the Jerkowski mortgage was executed, carrying on a suit, which was stoutly litigated, against Marco, just as if he had been a person *sui juris,* when, if the opinion of the expert was well founded, Marco ought to have been more insane than when the mortgage here in question was executed. It is clear that the opinion of the expert, like that of many other witnesses of the same class, is utterly at variance with the facts established by unimpeachable testimony, and certainly cannot avail one of these appellants, Parker; for if that opinion be well founded, then the judgment set up by Parker in this case, is open to the very same attack which is now made against the Jerkowski mortgage. The testimony shows that the action in which that judgment was recovered, was pending at the time the mortgage to Jerkowski was executed, and that judgment was not recovered until July, 1895, when, according to the theory of the expert, Marco must have been a confirmed lunatic. The other testimony upon which appellants rely to establish the fact that Marco was insane is that of McKee and Appelt, which we will next consider. One of these witnesses, McKee, was the only subscribing witness to the bond, and both of them were the subscribing witnesses to the mortgage. It appears from

the master's report of the testimony that both of the appellants insisted upon formal proof of the execution of these papers, and when Appelt, the first witness offered by the plaintiffs, was asked whether he saw the bond executed, both appellants objected upon the ground that he was not a subscribing witness, and insisted upon the production of the subscribing witness, whereupon McKee was put upon the stand, and the only questions asked him were as to the execution of the papers; but in the cross-examination he testified at great length, in regard to the mental condition and conduct of Marco, in response to inquiries by the defendants.

In the argument this man McKee is spoken of, with emphasis, as the plaintiff's witness, but we do not think he can properly be so regarded. In 1 Greenlf. on Evidence, sec. 442, that distinguished author says that the *general rule* is that a party who offers a witness cannot impeach or discredit him, but in the very next section he uses this language: "But to this general rule there are some exceptions. For where the witness is not of the party's own selection, but is one whom *the law obliges him to call*, such as the subscribing witness to a deed or a will or the like; here he can hardly be considered as the witness of the party calling him," &c. The rule thus stated by this high authority is fully sustained by common sense, and exactly fits this case. Here the plaintiffs were forced by the objections of these appellants to put McKee on the stand to prove the execution of the papers, and when on the stand he was asked by the plaintiffs no questions except as to the execution of the papers, to which he was a subscribing witness; hence he cannot, in any proper sense, be regarded as plaintiff's witness. McKee testifies to a great many facts and circumstances from which he formed the opinion that Marco was a crazy man, and did not know what he was doing when he signed the Jerkowski mortgage; but while the facts and circumstances may have been characteristic of an insane person, yet they may have been also characteristic of a person intoxicated with spirituous liquors. Now, as it has been shown by un-

impeachable testimony that the only form of insanity—dementia—attributed to Marco by those who profess to be skilled in such matters, could not have existed; and as the testimony, on all hands, leaves no doubt of the fact that Marco was addicted to the excessive use of spirituous liquors, the most natural inference would seem to be that these facts and circumstances described at such length by McKee were the ebullitions of a drunken rather than of a crazy man. Turning next to the testimony of Appelt, the other subscribing witness to the mortgage, we find that he says, when examined as a witness in this case, that he advised Marco to execute this mortgage—"It was explained to him thoroughly; I think he understood it"—that Marco told Jerkowski that he was willing to give him any security he wanted; that he had always expressed a desire to pay Jerkowski. He corroborates McKee in the statement that Marco at first objected to giving the mortgage here in question, because the property embraced thereon had been previously mortgaged, which is an undisputed fact—showing, unquestionably, that Marco had not lost his memory. So that it appears that there was a conflict of testimony between these two subscribing witnesses as to the mental condition of Marco at the time the Jerkowski mortgage was executed, and as to whether there was any undue influence brought to bear upon Marco to. induce him to sign this mortgage—Appelt saying: "There was no undue influence brought to bear on Marco to induce him to make this mortgage"—while McKee testified to the contrary. The character of neither of these witnesses has been formally attacked, but it seems to us that all the circumstances corroborate the version of Appelt rather than that of McKee. It is earnestly urged, however, by the counsel for appellants that the testimony of Appelt in this case is so entirely different from that which he gave in another case, tried in the United States Court, in which Parker, one of the appellants herein, was attacking a mortgage given by Marco to Pelzer, Rodgers & Co., upon the ground that Marco was insane at the time, that the force

and effect of Appelt's testimony in this case is overthrown. Without stopping to inquire how that testimony in another case, in a different Court, was injected into this case, inasmuch as no question seems to have been raised as to that point, it is sufficient to call attention to the fact that in the case in the United States Court, reported in 76 Fed. Rep., 510, under the title of Parker *v.* Marco and others, the question was as to the validity of a mortgage executed by Marco, about two months after the mortgage here in question was given, and it might very well have been that Appelt considered that Marco was insane when the latter was given, but was not insane at the time when the mortgage here in question was executed; and that is the explanation made by Appelt, in his testimony in this case, of the apparent discrepancy in his testimony in the two cases. Besides, as counsel on both sides have invited the attention of this Court to the case of Parker *v.* Marco and others in the United States Court, we may say that we do not understand that the United States Court decided that the mortgage of Marco to Pelzer, Rodgers & Co. was invalid because of want of mental capacity on the part of Marco to execute such a paper, but the decision was just to the contrary. For his Honor, Judge Simonton, in his decree, after dicussing the question, at some length, as to Marco's mental capacity, concludes his remarks as to that matter, with these words: "From the testimony, it is clearly shown that, at the date of the execution of this mortgage, Marco had sufficient mind and memory to execute it." So that we do not think that the appellants can derive any comfort from that decision, which both sides cited and rely on. It is true that Judge Simonton, after reaching his conclusion as to the capacity of Marco to execute the mortgage, does go on to consider another feature presented in that case, but not presented in this case, in regard to certain collaterals which had previously been placed by Marco in the hands of the attorneys of Pelzer, Rodgers & Co., which induced the final decree made in that case. Here, however, no such feature appears, and on the contrary

the simple question is whether it has been shown by the preponderance of the evidence, that Marco, at the time he executed the mortgage to his friend Jerkowski to secure the payment of an honest debt, which he had repeatedly declared not only his willingness but his determination to pay at all hazards, did not have sufficient mental capacity to execute such a paper. The undisputed fact that when it was proposed to Marco to give this mortgage to Jerkowski, he at once said that the property was already covered by a mortgage, shows that he understood the force and effect of what he was doing, and remembered the fact that there was a prior lien on the property. And when to this is added the testimony of Mr. Rhame, showing that some time afterwards, Marco not only remembered and understood the whole transaction, but was able to explain to Mr. Rhame that the whole amount due to Jerkowski was less than the amount stated in the condition of the bond, it is clear that appellants have failed to show that the conclusion reached by the Circuit Judge is against the preponderance of the evidence.

2d. The only remaining inquiry is whether the finding of the Circuit Judge that this transaction was not void under the Statute of Elizabeth, is against the preponderance of the evidence. In order to render a transaction void under that statute, it must be proved that it was entered into with an intent to defraud some one, usually a creditor. Fraud cannot be presumed, but must be proved. True, it is not necessary that there should be direct evidence of the intent to defraud, as fraud may be inferred from circumstances. Now, in this case, what are the circumstances proved? There can be no doubt that Marco was honestly indebted to the plaintiff's testator, and there is as little doubt that Marco was not only willing but anxious to pay such debt. We cannot undertake to say from the testimony that Marco was insolvent at the time. He certainly owned a large amount of valuable property and was also indebted to a large amount, but whether his property would have been sufficient for the payment of his debts, we cannot

undertake to say from the testimony. The only circumstances relied upon to show an intent to defraud, was the fact that the bond and mortgage were taken for an amount considerably larger than the amount really due; but the testimony shows that this was done at the suggestion of Lewenthal or S. Marco, and not at the suggestion of either Jerkowski or M. Marco. The witness, McKee, says that when this suggestion was made, he would not agree to it, unless Jerkowski would give Manuel Marco a declaration showing exactly what was due. To this Jerkowski readily assented, and accordingly a paper was drawn up by McKee and signed by Jerkowski, showing explicitly what was really due—a copy of which paper is filed with the complaint as an exhibit, and three copies of it were made, one of which was delivered to Mrs. Marco, the wife of Manuel Marco, another to Jerkowski, and the third was deposited in the safe in M. Marco's store. Besides, it appears that the mortgage given to Jerkowski did not cover the whole or anything like the whole of Marco's property. The Lydia place, which seems to have been the most valuable piece of property, the lowest estimate put upon it being $30,000, and the highest $60,000, for which, one of the witnesses said, Marco had been offered $40,000, which he refused to take, not being included in the Jerkowski mortgage. Under all these circumstances, it seems to us that the simple fact that the bond and mortgage were given for a much larger amount than was really due, is wholly insufficient to show any intent to defraud. In the first place, persons who propose to commit a fraud usually take every precaution to conceal every evidence of such intent; but here the fact, from which alone the Court is asked to infer fraud, was made known to too many people—McKee, Lewenthal, S. Marco and Mrs. Marco—and was, furthermore, put in writing, copies of which were furnished to three people. In the second place, the fact that only comparatively a small part of Marco's property was included in the mortgage, leaving out the most valuable piece of property owned by Marco—the Lydia place—which was not, so

far as appears, covered by any mortgage until about two months afterward, when it was included in the mortgage to Pelzer, Rodgers & Co., is quite sufficient to rebut the idea that this transaction was entered into with intent to hinder, delay or defeat the other creditors of Marco.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.