FOWLE MEMORIAL HOSPITAL COMPANY ET AL. v. J. L. NICHOLSON ET AL.·

(Filed 24 January, 1925.)

### 1. Corporations—Ultra Vires Acts.

The acts of a corporation will not be declared *ultra vires* when the authority therefor is expressly conferred upon it by the legislature or reasonably incidental thereto, and its general business is confined to the scope or compass prescribed for the general purpose of its creation, or necessary, expedient or profitable in the care and management of the *property it is authorized to hold.*

### 2. Same—Charitable Organizations—Hospitals.

*Held,* under the facts of the case, a lease by an incorporated charitable hospital association made to one of its members of the hospital grounds, buildings and equipment, having management thereof, will not be declared invalid as a matter of law, construing its charter with reference to its powers and the record of the meeting at which the lease was voted to be made, there being some evidence that it was made in pursuance of and in accordance with the powers granted by charter, and that it was necessary to continue in operation thereunder.

### 3. Corporations — Charitable Institutions — Hospitals—Lease—Majority Vote.

Where a majority vote of the members of a charitable hospital association is necessary to execute a lease of the incorporated association, a majority of a quorum of those present at a duly constituted meeting is sufficient.

### 4. Corporations—Charitable Institutions — Leases—Management—Good Faith—Appeal and Error—Remanding Case.

Where the affairs of a charitable hospital association are managed by its incorporating members who execute a lease to one of them having the management and exclusive control thereof, the lease is not void but voidable, and it is encumbent upon him to show, when the validity of the lease is attacked for fraud in fact or in law, that the lease was fairly and openly authorized and executed for an adequate consideration, and that its execution was free from his undue or controlling influence, oppression or imposition; and this case is remanded for further inquiry on the subject.

APPEAL by plaintiffs from an order of *Devin, J.,* in Chambers, 16 May, 1924.

The plaintiff company was incorporated on 2 May, 1902, for the purpose of building, conducting, maintaining and carrying on a hospital in the town of Washington for the care of the sick and of training people to nurse the sick. It is a charitable organization without capital stock, and the period of existence is unlimited. In section 4 of the certificate of organization it is provided: "All persons in order to be eligible as a member of said organization or company shall be a white person and a bona fide resident of the town of Washington. Five of the members need not be physicians or surgeons. All the members except five constituting the organization or corporation, shall be reputable, white physicians in good standing, holding license to practice medicine or surgery and the branches thereof from the State Medical Association or other body authorized under the laws of North Carolina to grant a license to practice medicine or surgery and the branches thereof in said State. The members other than physicians shall be elected by ballot by a two-thirds vote of the persons constituting the body or organization. The members who are physicians shall be elected by ballot by a majority vote of the members or persons constituting the body or organization. Whenever a person ceases to be a bona fide resident in the town of Washington he shall forfeit his membership and his successor shall be elected as aforesaid. Any member may be expelled upon a three-fourths vote by ballot for any improper, immoral or dishonest conduct, or conduct prejudicial to the welfare of the society or the institution."

Section 7. "Every member of the organization shall have one vote and no more at any meeting of the members of the corporation which vote may be cast by written proxy."

On 20 May, 1902, the commissioners of the town of Washington executed to the plaintiff company a deed for two lots, 81 and 84, in trust, "That the party of the second part shall build, erect, maintain and operate a hospital for the care and treatment of the sick and for the training of nurses to care for the sick and for no other purpose." It was also provided that failure or neglect for five successive years to maintain and operate a hospital in accordance with the terms of the deed should revest title in the grantors.

About 1906. dissension arose among some of the members which seems to have continued with more or less intensity until 25 February, 1920, when the defendant J. L. Nicholson proposed that the company lease to him the hospital and its other property for a period of 20 years. This effort failed.

At a meeting held 4 January, 1921, J. L. Nicholson submitted a lease which he wished the company to give him on the hospital property for a period of fifty years. According to the minutes the motion to grant the lease was carried, and a paper purporting to be the lease was offered in evidence. It contains these provisions: "It is understood and agreed that any additions, improvements or repairs which may be made by the party of the second part under this lease are to be made by him at his own expense or from income received from the operation of said hospital. Said party of the second part is to have full control of the operation of said hospital and he is to attend to employing and paying nurses, etc., and he is to attend to buying and paying for all supplies or equipment used by him in the operation of said hospital under this lease. Said party of the second part is to manage and look out for said property the same as if it were his own, except of course, that he is not to sell or in any way encumber any of said property. It is understood and agreed that if the said party of the second part should at any time decide that he should, for any reason, be unable to fulfill the terms of this lease, that he may cancel same by giving thirty days notice of such intention, provided, that in the event that he should so cancel this lease, then all improvements or repairs made by him on the said property are to belong to the hospital institution whether the party of the second part has been reimbursed for the same or not. It is also understood and agreed that Dr. John C. Rodman, Dr. P. A. Nicholson and Dr. S. T. Nicholson are to have the same rights of using said hospital that they now enjoy. It is understood that the party of the second part will not allow said hospital to cease to be operated as such for the period of time named in the deed to the party of the first part for the lot on which said hospital is situated."

The suit was brought on 3 April, 1924, and upon the pleadings and exhibits motion was made by the plaintiffs at the May term of the Superior Court to set aside the lease and enjoin the exclusive control of the hospital by J. L. Nicholson. The motion was denied and the plaintiffs appealed.

*W. C. Rodman and Small, McLean & Rodman for plaintiffs.*
*Ward & Grimes and H. C. Carter for defendants.*

ADAMS, J. The plaintiffs' motion to cancel the alleged lease and to prevent exclusive control of the hospital by one of the defendants is based upon three propositions: (1) The making of the lease was *ultra vires;* (2) it was not authorized by a majority of the members of the company; (3) the defendant J. L. Nicholson was an officer of the com-

HOSPITAL *v.* NICHOLSON.

pany and by exercising a controlling influence over the other members acquired exclusive control of the hospital without substantial consideration.

1. The general rule is that a corporation possesses only such powers as are expressly conferred upon it or such as are reasonably incidental to the powers expressly conferred and that its principal business is to be confined to the scope and compass prescribed for the general purpose of its creation; but it may ordinarily engage in transactions incidental to its main business when they are necessary, expedient, or. profitable in the care and management of the. property which it is authorized to hold. "To ascertain whether any particular act is *ultra vires* (beyond the powers) of the corporation or not, the main purpose must first be ascertained; then the special powers for effectuating that purpose must be looked for, and then, if the act is not within either the main purpose as described in or the special powers expressly given by the statute, the inquiry remains whether the act is incidental to or consequential upon the main purpose and is a thing reasonably to be done for effectuating it." *Attorney-General v. Mersey Ry. Co.,* L. R. (1907), 1 Ch. Div., 81; L. R. (1907), A. C., 415 (Eng.).

We have given the certificate of incorporation, the deed executed to the hospital company, the instrument purporting to be a lease, and the record evidence our careful consideration, and have concluded that upon the facts now appearing we cannot hold as a matter of law that the execution of the lease (if it was authorized and properly executed) was beyond the powers conferred upon the plaintiff company; but as the corporate object was to build, conduct, maintain, and carry on a hospital for the care of those who are sick and to train nurses for them, we are of opinion that the lease, possibly incidental to the main purpose of the corporation, can be sustained only on the ground that its execution was necessary to the accomplishment of the object originally contemplated in the certificate of incorporation, and that the burden is upon the lessee to establish ·such necessity.

The plaintiffs contend that the effect of the lease is to destroy the coöperative character and the democratic control of the association and to defeat the very purpose for which the company was organized; and the defendants insist that the former method of control resulted in failure and menaced the usefulness, as well as the continuance, of the institution. The evidence in reference to these contentions is meagre and inadequate and further inquiry concerning them as hereafter indicated, is essential to the final determination of the controversy.

2. The plaintiffs insist also that the lease was not executed by a majority of its members and is therefore void, even if its execution was not *ultra vires.*

It will be noted that this is a charitable organization, without capital stock, composed of reputable white physicians residing in the town of Washington, with the exception of five members who are not and need not be physicians or surgeons. In the certificate, as in the by-laws, the corporators are designated as "members"; the word "trustee" is not used. There is no board of directors, though the by-laws provide for a board of three supervisors. On 25 February, 1920, the members were increased to ten and on 20 of the following August to thirteen: S. T. Nicholson, P. A. Nicholson, J. L. Nicholson, L. H. Swindell, John W. Williams, C. McGowan, J. C. Rodman, E. M. Brown, physicians, and C. G. Morris, A. M. Dumay, E. M. Ayers, S. R. Mixon, and J. I. Randolph, laymen.

The minutes of the meeting held on 4 January, 1921, record the following as voting for the lease: C. G. Morris, A. M. Dumay, E. W. Ayers, E. R. Mixon, P. A. Nicholson, L. H. Swindell, C. McGowan, and S. T. Nicholson; and John W. Williams and J. L. Nicholson as not voting. J. C. Rodman, E. M. Brown and J. F. Randolph did not attend the meeting.

The plaintiffs contend that in the absence of a special provision to the contrary the vote of a majority of all the members of the association was essential to granting the lease, and that a majority of the members did not vote for it. It is particularly contended that although L. H. Swindell is recorded in the minutes as having voted he was called away before any business was transacted and did not vote in the meeting of 4 January, 1921; that McGowan was not a duly elected member and had no right to vote; that J. L. Nicholson did not vote; and that only six votes were cast in favor of the lease. This position is assailed by the defendants, who say only nine members of the association attended this meeting, eight of whom voted for the lease. These contentions present two questions: (1) Whether the vote of a majority of all the members was necessary to authorize and effectuate the lease; (2) whether McGowan's vote should be excluded from the count.

In *Cotton Mills v. Comrs.* 108 N. C., 678, it is said: "The courts of this country have generally adopted the common-law principle that if an act is to be done by an incorporated body, the law, resolution, or ordinance, authorizing it to be done is valid if passed by a majority of those present at a legal meeting."

This is the prevailing rule. If then, the names of L. H. Swindell and C. McGowan be excluded, it still appears that a quorum attended the meeting and that a majority of those present voted for the lease. For this reason it is not necessary to consider the latter of the two questions.

3. The plaintiffs say, in addition, that J. L. Nicholson, the lessee, was not only a member of the corporation, but an officer when the lease

was executed and for several years had been in charge of the hospital as superintendent and financial manager. They contend that he exercised a controlling influence over the members who voted for the lease; that the transaction in effect was a contract made by himself and others with himself contrary to the purpose of the founders of the institution, and effected by means of a constructive fraud upon the minority.

When an officer or director of a corporation purchases or leases its property, the transaction is voidable, not void, and will be sustained only when openly and fairly made for an adequate consideration. The presumption is against the validity of such contract and when it is attacked the purchaser or lessee must show that it is fair and free from oppression, imposition, and actual or .constructive fraud. Firmly established in our jurisprudence is the doctrine that a person occupying a place of trust should not put himself in a position in which self-interest conflicts with any duty he owes to those for whom he acts; and as a general rule he will not be permitted to make a profit by purchasing or leasing the property of those toward whom he occupies a fiduciary relation without affirmatively showing full disclosure and fair dealing. Upon this principle it is held that a director who exercises a controlling influence over codirectors cannot defend a purchase by him of corporate property on the ground that his action was approved by them. 14 A. C. J., 112, sec. 1880; *Railroad v. Bowler,* 1 Bush (Ky.), 468; *Wing v. Dillingham,* 239 Fed., 54; *Lime Works v. Moss,* 70 So. R. (Ala.), 292; *Hoffman v. Reichart,* 37 A. S. R. (Ill.), 219; *McIver v. Hardware Co.,* 144 N. C., 478.

Though not occupying the technical position of agent, trustee, or director, the lessee at the time the lease was executed was one of the members who had the management of the institution and the effect of the lease is to vest in him the exclusive control with right to receive the entire revenue. In these circumstances it is encumbent upon him to show that the lease was fairly and openly authorized and executed for an adequate consideration and that its execution was free from undue or controlling influence, oppression or imposition.

The facts in regard to these matters as well as to the necessity of the lease may be submitted to and determined by the jury upon proper issues.

It is suggested by the defendants that the present action cannot be maintained; but there is some evidence that it was duly authorized, and as the evidence concerning the contention is not satisfactory we think a more comprehensive statement of the facts is expedient if not absolutely necessary.

We approve his Honor's judgment denying the motion to cancel the lease or to continue the restraining order upon the present record, but we think the cause should be remanded for determination of the two questions involved in the first and third propositions on which the plaintiffs insist, and for additional evidence as to the circumstances under which the suit was brought.

Remanded.