16472

GILBERT *ET AL. v.* McLEOD INFIRMARY *ET AL.*
(64 S. E. (2d) 524)

176

Messrs. Samuel Want, Sam Rogol and LeRoy M. Want, all of Darlington, for Appellant,

Messrs. Willcox, Hardee, Houck & Palmer, of Florence, for Respondent, Aiken Investment Co.,

March 9, 1951.

STUKES, Justice.

The McLeod Infirmary is an eleemosynary corporation under the laws of this State and under its charter operates a general hospital of that name and a nurses' training school in the city of Florence; it is the largest such institution in the area and draws patronage from several counties. Under its constitution and by-laws the institution is governed by a life tenure, self-perpetuating Board of Trustees which is composed of not more than sixteen members. It is now provided, however, that two memberships shall remain vacant in honor of the memory of the founder, the late Dr. F. H. McLeod, and his son and successor, the late Dr. James C. McLeod, whose skill and success as surgeons and administrators are well known. At the times hereinafter mentioned the Board consisted of twelve members, with Mr. R. B. Hare, Chairman, and Mr. C. W. Stikeleather, Acting Secretary. The other members were (and are, so far as the record shows) Dr. W. R. Mead, who was and is also superintendent of the hospital, Dr. D. T. Riley, Dr. A. E. Lake, Mr. H. A. Smith, Mr. R. B. Fulton, Mr. M. L. Meadors, Mr. H. K. Gilbert, Mr. C. W. Muldrow, Mr. J. B. Aiken and Mr. F. H. McLeod, III, the last named

being also assistant superintendent. Messrs. Gilbert and Meadors, as trustees, are the plaintiffs (now appellants) in this action.

The controversy is concerned with a proposed sale of part of the land of the hospital to Trustee Aiken for $50,000.00. The hospital plant is located one block from the heart of the business section of the city upon contiguous parcels of land acquired at different times. That in controversy was acquired in 1942 for a consideration of $22,500.00 and fronts on South Irby Street 151.2 feet and runs back to a depth of 150 feet. On it is an old brick residence, in disrepair but used by the hospital for storage and for residence by one or more internes. Mr. Aiken desires the property to construct thereon an apartment building of twelve stories and penthouse, with offices on the three lower floors. (Pending this action he procured options on two other comparable but smaller lots at much higher prices, which he considered less desirable for his purpose.) The plan is to procure the financing by aid of a mortgage guaranty by Federal Housing Administration and Mr. Aiken's corporation for the purpose, Florence Apartments, Inc., appears to have had cash resources of only $500.00. The required investment of the sponsor is $75,000.00, at which the lot might be appraised, and the contemplated mortgage of $594,000.00 will supply the cost of construction. The application for mortgage insurance in evidence was executed by Aiken Loan & Security Company, by J. B. Aiken, as mortgagee, and again by J. B. Aiken (sponsor) on behalf of Florence Apartments, Inc., as mortgagor. The attorney for the latter was stated in the application to be R. B. Fulton, also an Infirmary trustee.

Five members of the hospital Board constitute an Executive Committee, of which the Board Chairman also acts as Chairman. They, one absent, met on the evening of Oct. 27, 1949 with Mr. Aiken, who was not a member of the committee, and considered the proposal of Mr. A. L. Hardee,

attorney (for Mr. Aiken), to purchase the Irby Street property and, after discussion, unanimously approved the sale and authorized the chairman to call a meeting of the Board of Trustees for the next evening, quoting from the minutes, "For the purpose of receiving the recommendation of the Executive Committee for further discussion and approval of the Board." Without the written notice thereof provided in the constitution of the corporation for regular meetings the Board met on the next day, which was Oct. 28th, attended by eight of the twelve members and among the eight were Mr. Aiken and Mr. Fulton. Resolution was unanimously adopted authorizing the sale and execution by the Chairman and Secretary of a ninety day option to Mr. Hardee as attorney. The option had been previously prepared, was taken to the meeting and annexed to the resolution as part of it and all present, except Mr. Aiken, signed. At least two members of the Board (the plaintiffs) were out of town at the time of the meeting, had no notice of it or its purpose and were, of course, among the absentees. The minutes contain no note of the disqualification of Mr. Aiken or Mr. Fulton, and there is no record of the vote except that it was unanimous. However, Mr. Aiken did not sign the option; Mr. Fulton did. Upon solicitation shortly thereafter two additional trustees signed at the foot of the option. Thus, wihout Mr. Aiken but including Mr. Fulton and Chairman Hare, nine of the trustees signed the option. Two thereafter rescinded their action and joined the growing opposition. This left seven proponents, including Mr. Hare, who did not vote in the attempted final action, as will be seen.

Agitation pro and con followed and at the regular monthly meeting of the Board in December, of which the usual and required notice was mailed each member, there was a full attendance, including Messrs. Aiken and Fulton. The Medical Staff of the hospital had meanwhile unanimously joined in a written petition of protest against the sale of the property and the Chief of Staff, Dr. Mobley, appeared before the Board and presented the petition. The propriety of the

former action was argued at length, the meeting lasting about three hours. Mr. Fulton seconded a motion to ratify and confirm the sale; a motion to table it failed by a vote of six to five, the chairman voting. The motion to approve and ratify was then carried by a vote of six to four. Mr. Fulton voted with the majority. Mr. Aiken and Chairman Hare did not vote.

On the last stated vote the action depends. It is conceded, in effect, by all that the action at the former, poorly attended special meeting on Oct. 28th, of which the constitutionally required notice was not given, was ineffectual. Mr. Hare testified in the trial of the case on circuit that he did not vote because he thought it unnecessary; that had he voted, it would have been with the apparent majority. Of course, the important fact is that he did not vote. Appellants meet respondents' effort to now count Mr. Hare's vote, to make the result seven to four, by uncontradicted testimony that three of the other members whose votes were counted in the six would vote oppositely, or at least not approve the sale, if the question were newly presented. They are Trustees Smith, Lake and Muldrow. The force, if any, of these contentions need not be determined. In view of the testimony with respect to Mr. Fulton's longstanding business association with Mr. Aiken and his professional representation of the projected building corporation, he should have disqualified himself from participation in the consideration of the proposal and should not have voted thereon; this reduces the favorable vote to five which is half of the trustees who were qualified to vote, manifestly not a majority of the Board and but a bare majority of the members voting. All of this is important in the light of the governing law which will be stated hereinafter. In view of it we need not examine appellants' interesting argument that a simple majority of the trustees voting is insufficient to authorize the sale of the corporation's real estate.

The Court is fully aware of the high character and standing of Mr. Fulton at the bar, but because of the facts which

have been mentioned we think he should have disqualified himself, as said, and refrained from voting. Not only did he vote; he engaged in the debate and was further active to the extent of making motions.

In the record are also minutes of a special meeting of the Board on Jan. 13, 1950, attended by all members, including Messrs. Aiken and Fulton. Nineteen members of the Medical Staff also attended. The material portion of the minutes follows: "There was considerable discussion by several members of the Medical Staff and the Board of Trustees regarding future plans for the McLeod Infirmary and regarding the sale of the lot fronting Irby Street. There was no business officially transacted at this meeting." Finally in the record are minutes of a meeting of the Board on February 3, 1950, which was attended by all of the members except Mr. Aiken. The record of the only positive action taken at this meeting is here copied from the minutes. "Mr. Fulton moved that the Chairman and Secretary of the Board be assigned to choose an attorney at their discretion and file an answer to the complaint of the Plaintiffs, Mr. M. L. Meadors and Mr. H. K. Gilbert. Mr. Meadors moved to amend Mr. Fulton's motion so that the attorney selected would be other than the attorney representing Mr. Aiken or Aiken Investment Company. Mr. Meadors' motion to amend was seconded and failed to pass. The motion of Mr. Fulton was then voted upon and passed."

Conveyance had meanwhile been executed on Jan. 6, 1950, by the Chairman and Secretary of the Board in behalf of the Infirmary to Aiken Investment Company, a corporation, and delivered to Mr. Hardee, as attorney, as was check for $50,000.00 of Aiken Investment Company to McLeod Infirmary. He addressed a letter of even date to the Infirmary and to the Aiken Company in which it was recited that the delivery to him was in escrow upon the condition that the Aiken Company might require delivery of the deed to it if unable to find, quoting, "another acceptable location" within thirty days.

Unless there is confusion in the record for appeal, we have accurately referred in the foregoing to three separate Aiken corporations.

*Lis pendens* in this action was filed Jan. 11, 1950, whereupon and pursuant to demand of Mr. Aiken the deed was delivered and recorded also on Jan. 11, 1950, and the consideration check was forwarded to the Infirmary which still holds it unused. Complaint was served about Feb. 1, 1950, and alleges in substance that the property in controversy was acquired and held by the hospital for future expansion, for which it is ideally located and none other like it obtainable, and meanwhile the building upon it is serving useful hospital purposes; expansion is needed and probable; the peculiar nature of the government of the *quasi* public corporation required for the sale unanimity of the governing board; the sale of its property under attack is void because of (a) the attendance and activity of Board member Aiken at the meeting where the transaction was considered; (b) and Aiken will profit and the hospital suffer from the construction of the proposed multi-story apartment or office building; (c) the consideration is less than the present market value of the property which is at least $75,000.00; (d) notwithstanding the absence of fraud in fact the interests of the Infirmary should predominate in the actions of the Board over those of its member, Mr. Aiken; (e) the conveyance is unwise and unreasonable; (f) it was authorized at an irregular meeting of the Board, without notice, some members were absent although Mr. Aiken was present, and the attempted ratification at the latter meeting was ineffectual because it was advocated by Mr. Aiken, though opposed by other Trustees, and only six voted in favor, which was not a majority of the Board; and finally (g) there was no notice that at the last Board meeting the unusual transaction would be finally considered. The prayer of the complaint was for judgment that the conveyance under attack be held to be null and void, and for incidental and general relief.

The bank defendant has no interest and did not appear.

The Infirmary, by the Chairman and Secretary of its Board of Trustees, answered and set up the proceedings of the aforementioned meetings of the Executive Committee and of the Board and alleged that the members who abstained from the six to four vote, namely Chairman Hare and Trustee Aiken, were favorable to the action, with which the officers complied and executed the deed under attack, all in good faith, wherefore dismissal of the action was prayed. Separate answer interposed by Aiken Investment Company, purchaser, signed by other counsel, denied need of the property for the future expansion of the hospital, the building upon it produces no revenue, the proposed apartment house with offices on the ground floor will not be detrimental to the hospital but on the contrary will enhance the value of its remaining property which will still have ample space for light, air and parking, with driveway reserved for convenience; the Board of Trustees have, under the constitution of the Infirmary, full control and management of the property with power to dispose of such portions as in their judgment will not be necessary for the operation of the hospital; the proceedings of the Executive Committee and the Board of Trustees (recited hereinabove) were within their authority and the option and subsequent conveyance of the property were binding upon the corporation; this defendant, upon the faith of the option, proceeded with construction plans, incidentally traveled within and without the State, incurring expenses, planned removal of its offices (presumably to the projected building), whereby it would be inequitable to grant the sought relief, if otherwise proper; plaintiffs were aware of the transaction and failed to act until after execution and delivery of the deed and payment of the consideration.

The case was heard upon voluminous testimony before the trial judge, without reference to master or jury. He found all issues of fact and law against plaintiffs and dismissed their complaint, whence this appeal. A

preliminary question made by respondents is whether the plaintiffs have capacity to sue upon the cause of action which they allege. The point might be passed over with the observation that there was no demurrer to the complaint and no appropriate allegation in either of the answers. However, the position is without merit. The relation of appellants to the corporation is analogous in this respect to that of directors and stockholders in a business corporation. Their ability to sue for vindication of a right in the corporation is universally recognized when the corporation, through its executives, fails and refuses to so proceed. The requirement that such plaintiffs first vainly try to prevail upon the corporation to act is fully met in this case by the actions of the Board of Trustees which have been set forth. 13 Am. Jur. 496 *et seq.,* Corporations, sec. 450 *et seq.*; and the corporation is a proper party; *ibid,* sec. 459; *Equitable Trust Co. v. Columbia Nat. Bank,* 145 S. C. 91, 142 S. E. 811; Cf. *Thompson v. Thompson,* 214 S. C. 61, 51 S. E. (2d) 169. Righting of the wrong will enure to the benefit of the corporation.

Also at the outset of their brief respondents assert the untenable position that this court is limited in its jurisdiction to review factual findings of a lower equity court under the authority of decisions prior to the adoption of the Constitution of 1895, which they cite. Art. V, sec. 4, of the latter broadened the appellate jurisdiction in such cases and this court was thereby fully empowered to review the facts and make findings contrary to those of trial courts of equity, in proper cases. *Finley v. Cartwright,* 55 S. C. 198, 33 S. E. 359; *McElwee v. Kennedy,* 56 S. C. 154, 34 S. E. 86; *Jerkowski v. Marco,* 57 S. C. 402, 35 S. E. 750; *Wise v. Wise,* 60 S. C. 426, 38 S. E. 794; *Huntley v. Welsh,* 61 S. C. 566, 39 S. E. 767. We have jurisdiction in appeals in equity to find the facts in accord with our view of the preponderance or greater weight of the evidence, in the absence of verdict by jury. Recent decisions

thereon are *Bates v. Bates,* 213 S. C. 26, 43 S. E. (2d) 612, and *Little v. Little,* 215 S. C. 52, 53 S. E. (2d) 884.

The eleemosynary nature of the Infirmary corporation has been mentioned. 1 Fletcher Cyclopedia of the law of Corporations (Perm. Ed.) 189, Sec. 56, follows in part: "Eleemosynary corporations, sometimes called charitable corporations, are such as are created, not for private gain nor profit, but for charitable purposes—for the administration of charitable trusts. * * * Included in the class are corporations created for the purpose of maintaining hospitals * * *. And they are private corporations though incorporated for the administration of the public charity which is endowed by private benefactions from such persons as bestow them." *Idem,* 13 Am. Jur. 174, Corporations, Sec. 19. To that effect also is our case of *Strauss v. Marlboro County General Hospital,* 185 S. C. 425, 194 S. E. 65.

The foundation of suits such as this is the relation in the nature of an express trust between a director and his corporation, which is also similar in this quality to that of principal and agent. "The directors or other members of the managing board are sometimes called trustees. Their legal position is the same no matter by what name they are called, whether directors, trustees, or governors." 1 Bogert on Trust 61. For the foregoing there is cited: *Llewellyn v. Aberdeen Brewing Co.,* 65 Wash. 319, 118 P. 30, Ann. Cas. 1913B, 667. "Undoubtedly the directors of a corporation in the management of the corporate affairs occupy a position of extreme trust and confidence and exercise great power for good or bad over the corporation and its shareholders. They are agents for the corporation. Toward it and the shareholders they undoubtedly stand in a fiduciary relation as far as corporate business is concerned." 1 Bogert 59. South Carolina cases in accord with this universal concept may be found in West's S. E. Dig., Corporations, Par. 307.

There appears to be no exact, or even very close, precedent in our reports for the instant case. Appellants rely upon *Duncan v. City of Charleston,* 60 S. C. 532, 39 S. E. 265, which condemned in result a contract by city council with a water corporation because three councilmen were stockholders of the corporation, on the stated ground that no trustee can contract with himself individually. This was in apparent conflict with the much earlier case of *Albright & Pinchback v. Town of Chester,* 9 Rich. 399, also involving a municipality, which was not cited. The practice approved in the last mentioned decision has long been prohibited in this State by statute, except under certain conditions. Code, sec. 1516. That our law has been thus developed with respect to municipalities is indicative that it is at least not fully applicable to other corporations. There are the helpful cases of *Peurifoy v. Loyal,* 154 S. C. 267, 151 S. E. 579, and *Fidelity Fire Ins. Co. v. Harby,* 156 S. C. 238, 153 S. E. 141, which firmly establish the ineligibility of a director to participate in corporate action with respect to a transaction in which he has an interest adverse to the corporation he may even not be counted to make a quorum at à meeting where the matter is acted upon, which is the general rule. 3 (1947 Rev.) Fletcher 387, 388, sec. 938.

The text just cited, revised Vol. 3, 1947, of Fletcher, beginning at page 329, sec. 913 *et seq.,* contains an excellent exposition of the law relating to personal dealings of an officer or director with his corporation or its property, with copious citations of decided cases in the footnotes. From the extensive review of the authorities there is extracted the rule that when a director, in selling corporate property to himself, represents or joins in the representation of the corporation, the transaction is voidable at the option of the corporation, or others suing in its behalf, merely upon proof of the fact stated; but when the purchasing director abstains from participation in behalf of the corporation and it is properly represented by others who are personally disinterested, the transaction will stand under attack if the

director made full disclosure, paid full value, and the corporation has not been imposed upon; and the burden is upon the director to establish these requisites by evidence. Later herein the facts of the instant case will be tested by this rule, which we consider sound and correct. The respondents accede, in effect, to it; the following, from 3. Pom. Eq Jur., 3rd Ed., 283 *et seq.*, appears in their brief: "In the case of corporations, which can only act through agents, there is often some difficulty in determining which of these two rules is applicable to a given transaction; viz., in solving the question of fact, whether the director or officer was acting in the transaction as agent or representative of the corporation, as well as on his own behalf, in which case the second rule should apply, and the transaction should be absolutely voidable; or whether the corporation was effectively represented in the transaction by other agents, so that it may be said to have taken part therein 'knowingly', and thus the director or officer has merely the burden of proving the fairness and good faith of this contract."

The respondents also cite the following quoted section of Am. Jur. which we reproduce, finding it not materially in conflict with the foregoing, when applied to the facts of this case: "A director or officer of a corporation is not absolutely precluded by his official position from dealing or entering into a contract with the corporation, nor is such a transaction void *per se*. While it is true, on the one hand, that where the directors or officers of a corporation deal with themselves as individuals, the transactions are subject to the closest scrutiny, under the most searching light of truth, and must be characterized by absolute good faith, it is also true, on the other hand, that where persons holding positions of trust and confidence in a corporation deal with the corporation, which is also represented by others, in entire good faith, fairness, and honesty, such transactions are not invalid and will be upheld. It would also seem that the mere fact that a director with whom the contract was made voted at the directors' meeting authorizing the same would not neces-

sarily invalidate the contract, where the disinterested directors, who themselves constituted a quorum, were unanimous in the action." 13 Am. Jur. 958, sec. 1005.

Reliance is had by respondents upon *Fowle Memorial Hospital Co. v. Nicholson*, 189 N. C. 44, 126 S. E. 94, 97, but we think we follow it in our disposition of this case. The result of it was to remand for jury trial issues of fact which we have determined in this case from the full record before us, adversely to repondents. There the hospital was leased to one in some former managerial relation to it and attack was made somewhat similar to that in hand. The court said that while the lessee was not technically a director, he was concerned in the management of the institution and the effect of the lease was to vest in him exclusive control, with the right to receive the entire revenues, under which circumstances it was incumbent upon him to show that the lease was fairly and openly authorized, made for an adequate consideration, and that the execution of it was free from undue or controlling influence, oppression or imposition, and those issues should be tried. We quote from the opinion: "When an officer or director of a corporation purchases or leases its property, the transaction is voidable, not void, and will be sustained only when openly and fairly made for an adequate consideration. The presumption is against the validity of such contract, and when it is attacked the purchaser or lessee must show that it is fair and free from oppression, imposition, and actual or constructive fraud. Firmly established in our jurisprudence is the doctrine that a person occupying a place of trust should not put himself in a position in which self-interest conflicts with any duty he owes to those for whom he acts; and as a general rule he will not be permitted to make a profit by purchasing or leasing the property of those toward whom he occupies a fiduciary relation without affirmatively showing full disclosure and fair dealing. Upon this principle it is held that a director who exercises a controlling influence over co-directors cannot defend a purchase by him of corporate prop-

erty on the ground that his action was approved by them."
(Citing authorities.)

Relating the evidence adduced in the trial of this case to
the rule stated above from Fletcher and confirmed by the
other cited texts, it appears that the case is a hybrid and
precisely fits into neither of the subdivisions of the rule, and
perhaps on that account is easier of solution. The latter is be-
cause of the activities of Mr. Aiken and his associate, Mr. Ful-
ton. Mr. Aiken did not vote in the corporate meetings upon
the question, but he seems to have done about everything else
which was calculated to accomplish his end. It is inferable
from the record that he overshadows the most of his fellow-
directors in business stature and vision. Relevant is the
following quotation in 3 Fletcher (1947 Rev.) 380, from
Machen on Corporations, sec. 1566: "The influence of the
interested director is not measured by his vote alone, but his
participation in the meeting, his arguments, and the weight
of his judgment may have prevailed mightily with his col-
leagues, so that in substance he should be deemed to have
made the contract, in part at least, on behalf of the company
as well as on his own behalf. According to this view, the
contract would be voidable even though the utmost good
faith were proved."

Moreover, Mr. Aiken's business associate, Mr. Fulton,
who was also listed in the F.H.A. application as attorney
for the (Aiken) corporate purchaser, was unrestrained in his
activity in the corporate meetings in favor of the sale. It
cannot be fairly said under these circumstances that the
challenged sale was the result of the untrammeled reason and
judgment of the Board of Trustees in behalf of the corpo-
ration, and it was entitled to no less than that.

Furthermore, under the evidence as we appraise it, Mr.
Aiken has failed to carry the burden of proof which was
upon him under the second subdivision of the rule. The pri-
mary fact of full value is not established. Mr. Aiken's wit-
nesses put it at or "around" the consideration amount, $50,-

000.00; the appellants', higher. His procurement of options on other comparable properties at $70,000.00 is rather conclusive against him on this point. Apparently no effort was made by the corporation, or anyone in its behalf, to obtain competitive offers from others. The recent depreciation in the value of money is within common knowledge. The downward trend was doubtless progressing daily during the negotiation of this deal. Adjudication of the value of land under such a condition is very difficult, if not impossible, in the absence of public sale or bids. Nor are we convinced that there is not prospect of real need by the hospital of this valuable land which is contiguous to that occupied by its present plant. Of course, the court is not its guardian; but the consideration is pertinent in testing the validity in equity of the transaction under review.

It was attempted to effect the purchase in unseemly haste, in view of the relationship. It was first broached by Mr. Aiken to the chairman and one other of the trustees on Oct. 26th and in consequence a meeting of the executive committee was called the very next day, was attended by Mr. Aiken who was not a member, and action taken in the absence of one of the five members of the committee who was not notified of the meeting. Special meeting was thereupon called of the whole board for the following day and held when three members were out of town and at least two of them without knowledge of the hasty proceedings, and without even the postcard notice to the members which was required by the constitution of the corporation with respect to regularly scheduled monthly meetings. Mr. Aiken's attendance upon the meeting of the executive committee, of which he was not a member, and his active participation (short of voting) in the subsequent meetings of the board, when the delicate matter was under consideration, were ill-fitting the situation. The argumentative and combative nature of his testimony in the trial court is likewise convincing of his forgetfulness, or lack of understanding, of his duty under the law of his *cestui que* trust.

We are constrained to hold that the facts which have been stated are amply sufficient to invalidate in equity the close corporate result, and avoid the sale. There is no finding of actual fraud or fraudulent intent; indeed, we think Mr. Aiken was innocent of that; but his conduct failed to measure up to the high standard required by the law of one in his fiduciary relation to the hospital.

The judgment is reversed and the case remanded to the Court of Common Pleas for appropriate order or orders to effectuate the views herein expressed.

FISHBURNE, TAYLOR and OXNER, JJ., and E. H. HENDERSON, A. A. J., concur.