**Dr. C. W. GLASSBURN and Blanche Glass-burn, Plaintiffs-Respondents,**

v.

**LAKELAND DEVELOPMENT COMPANY, Incorporated, a Missouri Corporation, Defendant-Appellant.**

No. 47972.

Supreme Court of Missouri,

Division No. 1.

Nov. 14, 1960.

Rehearing Denied Dec. 12, 1960.

Keyes, Bushman & Hearne, Russell T Keyes and John L. Hearne, Jefferson City, for defendant-appellant.

Claude T. Wood, Richland, for respondents.

WESTHUES, Presiding Judge.

Plaintiffs in this case as creditors and stockholders of the defendant Lakeland Development Company, Inc., filed this suit to have a receiver appointed for the corpora-

tion and for liquidation. The main assets of the corporation consisted of about 1,700 acres of land in Miller County, Missouri, situated northeast of the Lake of the Ozarks near the Dam. The defendant filed an answer and a counterclaim. In Count I, it asked for foreclosure of a deed of trust securing a note executed by plaintiffs. In Count II, the defendant asked that a deed be set aside whereby the corporation released to plaintiffs an easement for a 30-foot roadway along the lake front adjoining the plaintiffs' property. In Count III, defendant asked the sum of $10,000 actual and $20,000 punitive damages. The trial court appointed a receiver pendente lite. The case was tried on the merits by the court without a jury.

On August 10, 1959, the court dismissed plaintiffs' petition, denied all three counts of defendant's counterclaim, allowed the receiver and his attorney fees for their services, and entered judgment accordingly.

Plaintiffs did not appeal. Defendant corporation appealed but has presented to this court the single issue which involves Count II of the counterclaim. Defendant contends that the trial court erred in not setting aside the deed by which the easement for a roadway was released. Defendant claims that the deed should be set aside on the ground that the corporation received no consideration and that the plaintiffs at the time the deed was made were stockholders and members of the Board of Directors of the defendant company; further, that plaintiff C. W. Glassburn was the general manager of the company. Defendant claims that at the time the Board of Directors authorized the deed to be executed there was not a quorum present qualified to vote on the question. Plaintiffs admitted they did not pay anything for the deed and assert that the easement was worthless to the defendant corporation. Plaintiffs claim that five of the seven members of the Board were present at the Board Meeting; that plaintiffs refrained from voting and that the three remaining members present voted to have the easement released.

The record in this case contains 400 pages and numerous exhibits. While the evidence on the issue before us is brief, it is necessary to give a general outline of events which brought about this lawsuit. We shall relate this history as briefly as circumstances permit.

Prior to 1951, Leon Kane had had business dealings with a national organization of chiropractors with headquarters at Houston, Texas. In September, 1951, he came to Missouri and purchased about 1,700 acres of land in Miller County located near the Dam of the Lake of the Ozarks. About 900 acres of this land is located east of Highway 54 and the balance is located west of this highway. The land adjacent to the highway is about a mile and a half north of the Dam. The purpose Kane had in mind was to establish permanent headquarters of the National Association of Chiropractors. The land was purchased for a price of $40,000. Kane obtained the money to pay for the land from chiropractors living in various parts of the United States. In response to a letter sent to numerous chiropractors, he received in excess of $20,000. Of this sum, $10,000 was used to make a partial payment on the purchase price for the property. Kane then formed a corporation known as the Lakeland Development Company, Inc., the defendant in this case. Five hundred shares of stock were issued as follows: 498 to Leon Kane; 1 to his wife, Violet Kane; and 1 to his daughter. Kane deeded fifty acres of the land to the corporation for $5,000. Ten acres of this fifty were conveyed to a chiropractor in Kansas in payment for $5,000 which this doctor had sent to Kane for the purpose of forming the corporation. Eventually, all of the land to which Kane held title was transferred to the corporation. In the contract of sale between Kane and the corporation, it was provided that the corporation would assume contracts theretofore entered into by Kane or the corporation. These contracts or obligations were incurred by Kane or the corporation in raising the money necessary to pay the purchase price for the

land and for improvements made on the property. The record discloses that the money was contributed in amounts ranging from $200 to $5,000. The record further shows that representations were made that a haven or recreation center would be established and that the parties who had advanced the cash would be entitled to purchase choice lots. Note what the contract of purchase provided:

"Whereas, it was the original purpose of the said Leon Kane, in acquiring such property, to provide (1) for a permanent location of the headquarters of a national organization of Chiropractors known as the Committee for Chiropractic Education (CCE) then located at Houston, Texas, (2) to provide the site for a health and recreational center for the benefit of Chiropractors and their patients, and (3) to provide an opportunity for Chiropractors, their patients and others, to build or acquire summer cottages and homes and ultimately establish a community in the area so acquired, for activities of interest to Chiropractors and for the benefit of the Chiropractic profession and where Chiropractors from all parts of the country could meet and assemble together for educational, research and recreational purposes; and * * *."

The record shows that in excess of $75,000 had been collected at the time this case was filed. Many of the contributors had not received deeds for lots they desired to purchase.

The corporation, to raise funds necessary for contemplated improvements, had surveys made and maps drawn showing the location of lots and roads. Among the roads proposed was a roadway referred to as a "Scenic Drive" which would run along the shore line of the Lake of the Ozarks adjacent to lots offered for sale.

Eventually, differences arose and Mr. Kane was relieved of his duties as manager of the corporation. Plaintiff Dr. C. W. Glassburn, a chiropractor, was employed and assumed the duties of manager in September, 1955, at a salary of $500 per month.

A house located on the property which had been improved was purchased by Dr. Glassburn together with thirteen acres of land for a price of $25,000. He and his family occupied this place as their home.

The tract of thirteen acres purchased by Glassburn bordered on the lake. The deed conveying the land to him contained the following reservation providing for an easement along the lake 30 feet in width for a roadway: "Also, subject to the reservation by Lakeland Development Company, for itself, its grantees, successors and assigns, of a perpetual right and easement for a roadway 30 feet in width upon, over and across a strip of land 30 feet wide lying immediately North of and adjoining the 660 foot contour elevation of the Lake of the Ozarks above referred to, * * *." The 13-acre tract was located at about the center of the proposed Scenic Drive which was to be several miles in length. Glassburn, as manager, did not have smooth sailing. Difficulties arose about surveys which had been made which hindered sales of lots. This naturally curtailed the progress of planned improvements since no money was to be had to pay therefor. Differences between Glassburn and Kane who held the majority of the stock further complicated matters. By this time, the company had a seven-member Board of Directors. Kane still held a majority of the stock but over 200 shares had been transferred to chiropractors who had advanced cash to the corporation.

On July 8, 1957, at 10:00 a. m., a meeting of the Board of Directors was held at the offices of the company at Lake Ozark, Missouri. The seven members of the Board were present. Business was transacted until near noon when the meeting was adjourned to 1:00 p. m. The minutes show that after a number of matters were disposed of the meeting was adjourned until 4:00 p. m., "in order to take Dr. Hayes to the Air Port." The minutes further show that when the meeting reconvened at 4:00 p. m., there were five members present. The plaintiffs were members of the Board

and were present and thus were included in the five that were at this last session of the meeting. The last entry of any business transaction, as shown by the minutes, reads as follows:

"A Motion was made that in view of the fact that when the Lake stood at 660 feet above sea level, a roadway constructed in the easement reserved in the Deed to C. W. Glassburn and Blanche Glassburn would be submerged by the water to the depth of one foot to 18 inches, said easement so reserved in said Deed should be released and that the President and Secretary be authorized to execute a proper Deed of Release for this easement. The motion was seconded by G. R. Halley and the vote being taken, said motion was adopted."

A deed releasing the easement in question was executed and delivered to plaintiffs.

Plaintiffs, in their brief, say that they did not receive any secret profit through the deed releasing the easement and therefore the transaction is not voidable at the option of the defendant corporation. Plaintiffs further make the point that the action of the Board in releasing the easement, even though only five members of the Board were present, two of which were disqualified from voting, was valid. They contend that three of the five were qualified and they voted for the release.

Defendant contends that a corporation may not give away its property to a member of the Board of Directors; that such an action is voidable at the option of the corporation, its stockholders, or creditors. Defendant further contends that there was not a legal quorum present on July 8, 1957, when the Board adopted a motion to release the easement.

The view we have taken of this case renders unnecessary any consideration of the question of whether there was a quorum present at the Board meeting. We have concluded that the action of the Board in releasing the easement may be questioned and set aside at the behest of the defendant corporation.

Plaintiffs contend that the roadway was under water for three weeks during one season, that the high water left driftwood on the road, and that the road was damaged by erosion. It is asserted that therefore the easement is of no value to the defendant.

Speaking of values, let us digress for a moment to demonstrate the various opinions of witnesses who testified in this case. Plaintiffs offered evidence that the value of the land owned by the corporation was worth not to exceed $20,000. Defendant offered evidence that the land was worth over $250,000. This did not include the thirteen acres held by plaintiffs nor a few acres which had been deeded to various parties. There was a sharp conflict in the evidence on other questions presented to the trial court. While the issues are not before us for review, we may state that in our opinion the trial court's judgment was for the right parties with one exception, that is, the ruling on Count II of the counterclaim. We are of the opinion that the deed releasing the corporation's easement to a roadway along plaintiffs' property should be set aside. The general rule, applicable to the present case, may be found in 19 C.J.S. Corporations § 775, pp. 137, 138 where it is stated, "A purchase by an officer or director of property from the corporation is not void but is voidable at the option of the corporation, and a trust arises in favor of the corporation as to property so received. The directors or officers must deal fairly with the corporation in purchasing its property, and the transaction is subject to the closest scrutiny to determine its fairness. The courts will uphold the purchase when, and only when, it was fairly and openly made for an adequate consideration and the corporation was adequately represented by other officers or directors; * * *." For cases on the subject, see Gilbert v. McLeod Infirmary, 219 S.C. 174, 64 S.E.2d 524, loc. cit. 529–531(5) (6), 24

A.L.R.2d 60; Winger v. Chicago City Bank & Trust Co., 394 Ill. 94, 67 N.E.2d 265, loc. cit. 276(19–25); Gord v. Iowana Farms Milk Co., 245 Iowa 1, 60 N.W.2d 820, loc. cit. 831(10); Knudsen v. Burdett, 67 S.D. 20, 287 N.W. 673, loc. cit. 674(2, 3); Textile Mills v. Colpack, 264 Ala. 669, 89 So. 2d 187, loc. cit. 190(5); Bromschwig v. Carthage Marble & White Lime Co., 334 Mo. 319, 66 S.W.2d 889.

The argument that the easement was and is of no value to the corporation is not supported by the record. The fact that the roadway was under water for a period of three weeks and thereafter was covered with driftwood does not necessarily render the easement worthless. However, there is another reason that a court of equity should set aside the deed in question. As the above statement of facts discloses, a number of chiropractors advanced money to the corporation with the understanding that lots or tracts of land would be deeded to them in payment of the debt. Kane testified that in 1953 maps were sent to prospective purchasers showing that the scenic or lake road was to be constructed. Note a portion of Mr. Kane's evidence: "In other words, now, that is the condition under which all of this land has been promised to these other people, the land that Doctor Mabis was supposed to get, the land that Mr. De-Graffenreid, that Mr. Nichols bought, the land that these people bought up on the highway was all sold subject to the specific understanding that they would have access to the lake and this road."

That evidence certainly indicates that the corporation obligated itself not to release the easement in question. It further indicates that by releasing the easement the company broke faith with the parties who advanced money on the theory that they would require lots or tracts of land from the company and that the easement for a roadway in question would not be released.

What we have said is sufficient to demonstrate that in equity and good conscience, plaintiffs have no right to retain the fruits of the deed in question.

That part of the judgment entered by the trial court denying the relief prayed for by the defendant corporation in Count II of the counterclaim is hereby reversed and the trial court is hereby directed to enter a judgment on Count II of the counterclaim setting aside the deed in question and to reinstate the easement in favor of the defendant corporation.

It is so ordered.

All concur.